Tribune Company, Appellant, v. Canger Floral Company et al., Defendants Below, H. W. Cline, Trustee, Appellee.

Gen. No. 41,276.

150

Heard in the second division of this court for the first district at the June term, 1940. Opinion filed November 28, 1941.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, for appellant; JOSEPH M. TAUSSIG, JOHN M. O'CONNOR, JR. and THOMAS F. SCULLY, all of Chicago, of counsel.

RAPPAPORT & RAPPAPORT and HALFPENNY & HAHN, all of Chicago, for appellees.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

In June 1938, Tribune Company, plaintiff, procured a judgment for $93 and costs against the Canger Floral Company for unpaid advertising. In January 1939, plaintiff procured a judgment for $35.15 and costs against Ben Mages, also for unpaid advertising. Executions issued and served pursuant to both judgments were returned "no property found." Plaintiff instituted separate garnishment proceedings against H. W. Cline as garnishee in aid of the respective executions. The garnishee's answers of "no funds" were contested and the two cases were consolidated in the trial court. After a trial by the court without a jury

the issues were found against plaintiff and judgment was entered discharging the garnishee. This appeal followed.

Cline, the garnishee, operated an agency whose business consisted principally of liquidating the assets of financially distressed enterprises among their creditors. The principal defendants, Canger Floral Company and Ben Mages, contacted the garnishee for the purpose of settling their business debts and winding up their respective business enterprises. Pursuant to arrangements made between the principal defendants and Cline, the former separately conveyed to the latter as ''trustee'' all their assets for distribution among their creditors by written ''assignments for the benefit of creditors.'' Both of the principal defendants then delivered their assets to Cline, who sold same. The allegation in the garnishee's answers that he had ''no funds'' in his possession belonging to the principal defendants is predicated upon the instruments of assignment which he claims completely divested said defendants of all title to or interest in the assets assigned to him by them or in the proceeds realized from the sale of such assets. It was admitted upon the trial that the assets received by the garnishee ''trustee'' under the two assignments were sufficient to pay in full the claims arising out of plaintiff's judgments against the principal defendants and it was further admitted that when Cline was served with the summonses in garnishment he had in his possession sufficient funds realized from the sale of said assets to pay such claims.

Inasmuch as there are some differences in the provisions of the respective assignments it is appropriate to briefly consider them separately.

Under the terms of the instrument by which the defendant Mages sought to accomplish his assignment he purported to transfer all of his assets to the garnishee

as "trustee" for distribution to his creditors. His assignment contained the following provision:

"It is understood that no distribution will be made to creditors until all consents are in."

It also provided:

". . . and after the payment of necessary and reasonable costs and expenses in the execution of this trust and payment of such claims as may be preferred under and by virtue of the laws of this State, distribute on a pro rata basis the balance of the trust fund to my general creditors as their interests may appear."

A letter in the following form, bearing the same date as the Mages' assignment, was mailed to and received by plaintiff:

"THE CHICAGO ASSOCIATION OF
CREDIT MEN
222 North Bank Drive
Chicago
Adjustment Bureau
H. W. Cline, Manager.
December 1, 1938

To the Creditors of
Ben Mages
d.b.a., Ben Mages Sport Store,
4226 Archer Avenue,
Chicago, Illinois.
Gentlemen:

For some time past the above mentioned debtor has been operating at a loss. Realizing that he could not continue and wishing to conserve his remaining assets for the benefit of his creditors he has today executed an assignment to me as Trustee.

There will be a public sale of the assets on the premises Tuesday, December 6, at 11:00 A.M. and, for the purpose of discussing the affairs of the debtor, there

will be a meeting of the creditors in this office on Tuesday afternoon, December 6, at 3:00 P.M.

The preliminary statement submitted indicates assets and liabilities as follows:

| Assets | | Liabilities | |
|---|---|---|---|
| Merchandise | | Merchandise | |
| (at cost) ......$2,500 | | Creditors ......$7,000 | |
| Fixtures (at cost) 600 | | Sales Tax ....... 60 | |
| | $3,100 | | $7,060 |

These figures are subject to check and will be available at the meeting.

So that we may know we have your cooperation in connection with this matter, won't you please sign and return the enclosed consent form, together with an itemized statement of your account.

Yours very truly,
H. W. Cline,
H. W. Cline,
*Trustee.*"

Accompanying Cline's letter was this consent form:

"The undersigned, a creditor of Ben Mages d.b.a. Ben Mages Sport Store, 4226 Archer Avenue, Chicago, Illinois, does hereby consent to the assignment of all the assets of every kind and description of the said Ben Mages, d.b.a. Ben Mages Sport Store to H. W. Cline, as Trustee for the benefit of creditors, and does hereby agree to accept the pro rata share paid on the undersigned claim from the fund derived from the liquidation of the aforesaid assets in *full settlement* of all claims of every name and nature against the said Ben Mages d.b.a. Ben Mages Sport Store.

The undersigned further authorizes the said H. W. Cline to execute a *full release* of the annexed account of the said Ben Mages d.b.a. Ben Mages Sport Store after distribution of the proceeds derived from the assets has been made.

The undersigned agrees not to institute proceedings for the collection of the annexed account during the life of this Trusteeship." (Italics ours.)

Plaintiff did not sign this consent, advising Cline that it considered the assignment invalid as to it. Checks sent by Cline to the creditors of Mages in the course of the liquidation of the assets received by him under Mages' assignment bore this form of endorsement:

"This check is accepted in accordance with a certain trust agreement to which we have or hereby become a party."

Plaintiff refused all of such checks and returned same uncanceled to Cline.

Defendant Canger Floral Company by a similar instrument assigned all of its assets to Cline as assignee for the benefit of its creditors. While this defendant's assignment for the benefit of creditors contained no reference to the obtaining of consents from the creditors, letters inclosing mimeographed consent forms identical in language with those used in connection with the Mages assignment, except that this defendant's name was substituted as debtor, were mailed to the creditors of the Canger Floral Company, including plaintiff. Cline testified that this was the usual procedure followed where assignments were made to him for the benefit of creditors. Plaintiff did not sign the consent. In the course of the liquidation of the Canger Floral Company assets, Cline, as "trustee," mailed plaintiff two checks as its pro rata share of the assets of said company. The second check, carrying the notation "final dividend at 3.50 per cent," bore the following form of endorsement:

"Received of Harry W. Cline, trustee, the amount of this check as our pro rata of the net proceeds realized from the insolvent estate of Canger Floral Company and in consideration thereof *hereby release said*

*insolvent and said trustee from further liability."*
(Italics ours.)

Cline testified that this was the general form of endorsement used by him on dividend checks in his business of liquidating the assets of debtors under assignments made by them for the benefit of their creditors. Plaintiff returned both checks to Cline, advising him that it considered this assignment invalid as to it because of the conditions included in the foregoing form of endorsement.

Plaintiff contends that "the funds in the hands of the garnishee, the assignee under the purported assignment for the benefit of creditors, are subject to garnishment, because these assignments are not valid as to plaintiff for the reason that their purpose and effect is to coerce creditors to accept in full settlement payment of only a fraction of their claims" and that "this violates the law of Illinois, and cannot be achieved either directly or indirectly."

The law of this State has always sanctioned honest settlements made by debtors with their creditors or for their benefit because settlements of this character, fairly made, tend to expedite the work of the courts and to avoid protracted delay in distribution and unnecessary waste of assets. The validity of common-law assignments for the benefit of creditors as a method of effecting such settlements has long been recognized. (*Pogue v. Rowe*, 236 Ill. 157.) However, the law is just as well settled that an assignment for the benefit of creditors may be rendered invalid by a debtor annexing thereto conditions onerous to his creditors and favorable to himself.

The applicable principles of law are clearly stated in *Danville Auburn Auto Co. v. National Trust & Credit Co.*, 212 Ill. App. 116, where the court said at pp. 120, 121:

"One of the necessary elements of a voluntary assignment for the benefit of creditors is the implication

of a trust and the intervention of a trustee. Conveyances directly to creditors and not upon trusts are not such voluntary assignments. *Weber v. Mick*, 131 Ill. 520; *Walker v. Ross*, 150 Ill. 50. The trust agreement in this case provides, in substance, that it is for the benefit of all the creditors who might accede to its terms. In the case of *Ramsdell v. Sigerson*, 7 Ill. (2 Gilm.) 78, a very similar agreement was under consideration and had a provision therein that the creditors named should release their demands against the debtor without full payment of the same. The same argument was advanced in that case as in this, that the debtor had a right to prefer one or more of his creditors, but the court held: '. . . And although the right of a failing debtor to prefer one or more of his creditors by deed of assignment, if properly executed and without fraud, is fully recognized as law by this court, still, if it contains a condition of release without provision for full payment of the demands of his creditors, it will be considered fraudulent and void in regard to all such creditors as are not parties to it, and will not prevent them from proceeding to judgment and execution, as though no such assignment had been made, as long as the property remains in the possession of the assignors or assignees of such an assignment.' In the case of *Conkling v. Carson*, 11 Ill. 503, the trust agreement contained a provision that the creditors accepted the property assigned in full payment of their debts and was for the benefit of all creditors who should thereafter execute or accede to the same, and it was held to be void as against existing creditors who were not parties thereto and it was said: 'The law does not allow a debtor to impose such harsh and onerous conditions upon his creditors. A debtor in failing circumstances has an undoubted right under the laws of this State to prefer one creditor to another, and to provide for the preference, by assigning his effects; but he is not permitted to say to any of his

creditors that they shall not participate in his present estate, unless they will release all right to satisfy the residue of their debts out of his future acquisitions.' To the same effect also is *Howell v. Edgar*, 4 Ill. (3 Scam.) 417.

It is apparent that this trust agreement, whether intended as an assignment for the benefit of all the creditors or as a preference to those who executed it or acceded thereto, is void as to those creditors who are not parties thereto.''

Thus assignments purportedly for the benefit of creditors, which place such creditors upon the choice of taking nothing at all or a fraction of their claims in settlement of the whole, are invalid as to nonconsenting creditors. The garnishee agrees that such is the law but he urges that since in the instant case the onerous conditions were not contained in the debtors' assignments themselves but were only contained in the consent forms and the forms of endorsement on the checks forwarded to the creditors by him as assignee, the imposition of such conditions cannot be charged against the debtor assignors so as to render their assignments invalid as to plaintiff.

We are impelled to agree with plaintiff that the facts and circumstances in evidence disclose that an obvious attempt has been made here to circumvent the foregoing rules of law by omitting from the assignments themselves a provision for the discharge in full of the creditors' claims upon their acceptance of their pro rata share of the proceeds of the sale of the assets of the debtors and then inserting such a provision both in the consents and endorsements on the dividend checks mailed to the creditors by the garnishee trustee. It will be noted that ''consents'' are specifically referred to on the face of the Mages assignment, where it is stated, ''It is understood that no distribution will be made to creditors until all consents are in.'' It will be further noted that the consents in the Mages case pro-

vide that his creditors "*agree to accept the pro rata share paid* on the undersigned claim from the fund derived from the liquidation of the aforesaid assets *in full settlement* of all claims of every name and nature against said Ben Mages. . . ."

As heretofore shown Cline, after the Canger Floral Company assignment had been made to him, forwarded to the creditors of that company consent forms similar to those sent to the creditors of Mages. No creditor was allowed to participate in the "final dividends" except by indorsing a check bearing this legend: "Received of Harry W. Cline, Trustee, the amount of this check as our pro rata of the net proceeds realized from the insolvent estate of the Canger Floral Company, and, in consideration thereof, hereby release said insolvent and said Trustee from further liability."

The law will not permit that to be accomplished indirectly which cannot be done directly. In *People v. Union Gas & Electric Co.,* 254 Ill. 395, the court said at p. 413:

"The law looks to the effect and not to the purpose. Neither will it 'sustain a transaction illegal in character, accomplished by indirection, when it could not be done if the methods were direct.' *Dunbar v. American Telephone Co., supra.*" [224 Ill. 9.]

We think this rule is applicable here. It has been shown that as to those creditors who do not accede to same an assignment for the benefit of creditors is void which contains a provision that the creditors shall not participate in the debtor's present estate in the hands of his assignee unless they release all right to satisfy the residue of their claims out of his future acquisitions. To allow such prohibited releases to be obtained through indirection by the assignee by their inclusion in consent forms and endorsements on dividend checks would be to sanction the very thing which the courts of this State refuse to permit debtors themselves to

do. Cline, the trustee garnishee, having liquidated the assets of more than two thousand insolvent debtors pursuant to assignments for the benefit of creditors over a period of twelve years and having used the same consent and check endorsement forms in every such liquidation, it is fair to assume that the principal defendants were familiar with his method of doing business. By the reference to "consents" in the Mages assignment, it seems clear that Mages anticipated that Cline would follow his usual method. That such method was merely a shift or contrivance to circumvent the established law is apparent. Surely conditions which, if contained in assignments for the benefit of creditors, would render same invalid cannot be legally imposed on the creditors by the assignee in behalf and for the benefit of the debtor assignors. In any event the assignments, consent forms and check endorsement forms being part of one and the same transaction, which was the liquidation of the respective principal defendants' assets, must be considered together and, when so considered, show conclusively that the condition was imposed upon the plaintiff herein that it was required to give said defendants a full release of their debts, if it desired to participate in the distribution of the assets of their insolvent estates.

In our opinion the assignments involved herein are void as to plaintiff, which neither assented to the trusteeship nor agreed to accept dividends, which amounted to only a small fraction of its claims, in full settlement of same and the assignments being invalid as to plaintiff, it has the right to reach the funds in the hands of the garnishee by garnishment proceedings. In so far as the beneficial plaintiff is concerned, the garnishee has funds in his possession belonging to the principal defendants sufficient to pay its claims.

Other points have been urged and considered but in the view we take of this case we deem further discussion unnecessary.

The judgment of the municipal court of Chicago is reversed and judgment is entered here in favor of plaintiff and against the garnishee for $35.15 and costs in the case of *Tribune Co. v. Mages* and judgment is also entered here in favor of plaintiff and against the garnishee for $93 and costs in the case of *Tribune Co. v. Canger Floral Co.*

*Judgment reversed and judgments here.*

SCANLAN, P. J., and FRIEND, J., concur.