LEE RUSTER, a/k/a Asalee Cifonie, Plaintiff-Appellant, *v.* DONALD RUSTER, Defendant-Appellee.

Second District    No. 80-133

Opinion filed December 24, 1980.

356

Boyd L. Gates, of Carpentersville, for appellant.

Don Weaver, of Geister, Schnell, Richards & Brown, of Elgin, for appellee.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

The plaintiff appeals from an order of the circuit court of Kane County dismissing her complaint, which sought a money judgment for arrearage of child-support payments and for an allowance of attorney's fees and costs. Following an evidentiary hearing, the trial court found that the evidence sustained the affirmative defenses of equitable estoppel and *laches* raised by the defendant.

The parties were married on December 5, 1958, and thereafter had one child, Jeffrey. On May 31, 1961, a divorce decree was entered which directed, in part, that the defendant, Donald Ruster, pay to the plaintiff, Lee Ruster, the sum of $10 per week for the support and maintenance of the couple's minor child. An order modifying the divorce decree was entered on February 19, 1968. The order provided that defendant should pay the sum of $22 per week for the maintenance and support of Jeffrey Ruster.

On January 26, 1979, plaintiff filed the instant suit seeking an arrearage of child support payments. The suit alleged that defendant failed to make any such payments from November 30, 1969, through July 10, 1978, the minor's 18th birthday. Defendant's answer raised the affirmative defenses of equitable estoppel and *laches*.

The issue of equitable estoppel here focuses on a series of letters transmitted between the parties in December of 1969 and January and February of 1970. On December 6, 1969, plaintiff wrote to defendant's attorney as follows:

"* * * As for reducing support payments, my husband, Jan Cifonie, is willing to take the entire responsibility of Jeff's support and education if Don will give up his visitation privilege. Otherwise, I do not wish to accept a decrease in support without a court order as I am not able to return to work at this time. My husband feels that it would be a privilege rather than an obligation to support Jeff, and if this is agreeable to Don, his financial burden can be lightened permanently." * * *

After not having received a response to this letter, plaintiff, through her attorneys, again wrote to her former husband's attorney on January 21, 1970, as follows:

"* * * I am certain that specific visitation rights can be worked out along with a reduction in child support if the situation warrants

it, but before anything can be worked out, the arrearage must be paid in full.

Mrs. Cifonie has mentioned another solution, that is the adoption of the child by her present husband. Kindly discuss this with your client and then let me hear from you."

Defendant then responded through his attorney on February 2, 1970:

"* * * Mr. Ruster's position has been outlined in my letter to Mr. Jacobs, a copy of which you have. If you will prepare the necessary Stipulation to Amend the Judgment of Divorce in line with our suggestions, reducing the present support until September 1, 1970, and then reinstating it; and, also spell out specific visitation rights for the Christmas season as well as the summer visitation, we will be glad to sign the same and return to you for processing. * * *

With regard to the adoption of the child by Mr. Cifonie, Mr. Ruster is not agreeable thereto." * * *

Defendant stated at the hearing that he relied on the representations made in the letter of December 6 and discontinued his visitation of Jeffrey in exchange for the cessation of child support payments. In his brief, defendant states that the December 6 letter and defendant's subsequent actions, in fact, established an agreement between the parties to simultaneously cease support payments and visitation privileges.

Plaintiff testified that she was really referring to adoption in the letter of December 6 and this suggestion was refused by the defendant in the letter of February 2.

The doctrine of equitable estoppel is an exception to the otherwise rigid rule that child-support payments become vested when and as they accrue. (*Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 21; *In re Estate of Neirinck* (1978), 62 Ill. App. 3d 189.) The well accepted definition of the doctrine has been stated by the Illinois Supreme Court in *Dill v. Widman* (1952), 413 Ill. 448:

"* * * [W]here a party by his statements or conduct leads another to do something he would not have done but for the statements or conduct of the other, the one guilty of the expressions or conduct will not be allowed to deny his utterances or acts to the loss or damage of the other party. The party claiming the estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the true facts." 413 Ill. 448, 455-56.

Estoppel may be established through proof of an agreement between the parties to discontinue support payments in exchange for a cessation of visitation privileges. (*Bartlett v. Bartlett* (1979), 70 Ill. App. 3d 661, 662-63; see *Anderson v. Anderson* (1964), 48 Ill. App. 2d 140. But see *Martin v.*

358

*Comer* (1975), 25 Ill. App. 3d 1038, 1040.) However, regardless of whether defendant relies upon the theory that an agreement existed, the estoppel must be proved by clear and unequivocal evidence. *Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 21; *Lewis v. Lewis* (1977), 48 Ill. App. 3d 281, 284.

Defendant contends that plaintiff's statement in her letter of December 6 constituted an unequivocal offer allowing him to discontinue support payments in exchange for cessation of visitation. However, a reading of that letter leads us to the conclusion that plaintiff's references to child support payments and visitation privileges merely constituted a suggestion for negotiation rather than an unequivocal binding offer. This fact is particularly evident in light of plaintiff's references to visitation rights in the January 21 letter. Moreover, even if such an "offer" did exist, it does not appear that defendant accepted the offer or that he, in fact, relied upon it. Defendant's letter of February 2 indicated that he was interested in establishing Christmas and summer visitation rights. Thus, it is manifest that he did not accept any "offer" made in the December 6 letter; nor did he rely on any representations made therein. Furthermore, defendant stated at the hearing that he did not see his son during 1969, although it is clear that he was paying child support during that year.

As a final matter, the doctrine of equitable estoppel requires that the party claiming the estoppel must have no knowledge or convenient means of knowing the true facts. Here, defendant could have easily inquired as to the exact meaning of plaintiff's statements. In light of the equivocal nature of those statements, the defendant should have made some inquiry regarding the context in which those statements were made.

It is clear to us that plaintiff was not particularly diligent in seeking to enforce the divorce decree with regard to child support payments. Subsequent to 1970 plaintiff only made two attempts to contact her former husband, and suit was not ultimately filed until after the couple's child had reached the age of majority. However, equitable estoppel cannot be based upon the single fact of the plaintiff's failure to make a demand upon the defendant. Defendant cannot by his own default place the burden of making additional demands upon plaintiff. No demand could possibly have had greater significance than the original mandate of the court. (*Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 21-22; *Ellingwood v. Ellingwood* (1975), 25 Ill. App. 3d 587, 591-92.) Additionally, the fact that defendant had been in arrears continuously for eight years prior to the filing of suit would also not invoke the doctrine. In *Ellingwood v. Ellingwood* (1975), 25 Ill. App. 3d 587, the judgment for an arrearage was affirmed where plaintiff brought her action 22 years after the support order was entered. Similarly, in *Lewis v. Lewis* (1977), 48 Ill. App. 3d 281, an order for an arrearage was enforced where the plaintiff had waited

nine years prior to filing her petition. Equitable estoppel is not brought into effect by the mere passage of time. *Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 22; *In re Estate of Neirinck* (1978), 62 Ill. App. 3d 189, 192.

■■ Finally, those cases which have utilized passage of time as a significant factor in denying enforcement of arrearages have cautioned that their decisions would have been different had the father absconded or refused to make payments. (*In re Estate of Neirinck; Martin v. Comer* (1975), 25 Ill. App. 3d 1038, 1041.) In the instant case it appears that defendant resided in several locations in Michigan and Arkansas subsequent to the communications with his former wife in early 1970. The testimony and defendant's admission of facts prior to the hearing make it clear that he made concerted attempts to keep the knowledge of his whereabouts from his former wife. Under these circumstances the delay does not appear to be unreasonable. The defendant failed to establish the defense of equitable estoppel by clear and convincing evidence, and the trial court's finding in that regard constituted an abuse of discretion.

The trial court also determined that plaintiff's suit was barred by the doctrine of *laches*. With regard to the application of *laches*, the Illinois Supreme Court made the following statement in *Pyle v. Ferrell* (1958), 12 Ill. 2d 547:

"[A] suit is held to be barred on the ground of *laches* or stale demand 'where and only where' the following facts are disclosed: (1) Conduct on the part of the defendant giving rise to the situation of which complaint is made and for which the complainant seeks a remedy; (2) delay in asserting the complainant's rights, the complainant having had notice or knowledge of defendant's conduct and the opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit, and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is held not to be barred." 12 Ill. 2d 547, 553.

■■ Application of the doctrine of *laches* is within the sound discretion of the trial court and a finding by that court that a party is guilty of *laches* will not be disturbed on review unless the determination is so clearly wrong as to constitute an abuse of discretion. (*Bobin v. Tauber* (1976), 45 Ill. App. 3d 831, 837.) Although the supreme court has set forth general guidelines, there is no absolute rule by which *laches* can be determined, and the facts which combine to constitute *laches* depend upon the circumstances of each individual case. (*Bobin v. Tauber; Atwater v. Atwater* (1974), 18 Ill. App. 3d 202, 209.) Nevertheless, it is quite clear that *laches* is not available as a defense unless the defendant has suffered injury or prejudice as a result of plaintiff's delay in filing her petition. (*Heinze v. Heinze* (1979), 79 Ill. App. 3d 1121, 1123; *Jozwick v. Jozwick*

360

(1979), 72 Ill. App. 3d 17, 22; *Gill v. Gill* (1972), 8 Ill. App. 3d 625, 627, *aff'd* (1973), 56 Ill. 2d 139.) In the present case we are satisfied that defendant was not injured as a result of plaintiff's delay in bringing suit. Numerous cases have held that merely requiring the defendant to pay in one lump sum that which he had owed for a number of years does not constitute an injury sufficient to invoke the doctrine of *laches*. (*Jozwick v. Jozwick*; *Doty v. Doty* (1977), 45 Ill. App. 3d 213, 215; *Baldwin v. Baldwin* (1974), 21 Ill. App. 3d 380, 382; *Atwater v. Atwater*.) In fact, it has been suggested that a defendant who has failed to make child support payments may have actually benefited by the delay as he has had the use of funds which he otherwise would not have had. See *Heinze v. Heinze* (1979), 79 Ill. App. 3d 1121, 1124.

We do not believe that defendant's failure to exercise his visitation privileges contitutes sufficient injury to invoke the doctrine. It is evident that the failure of defendant to visit his son did not result from any delay on the part of plaintiff in filing her suit. In view of the circumstances shown by the evidence in this case, the trial court erred in finding the plaintiff guilty of *laches* and thereby abused its discretion.

Plaintiff further contends that interest should be assessed on the child support arrearages. An examination of the record in this case discloses that no such claim was advanced by the plaintiff in her complaint and reference is made by the plaintiff to a claim for interest in a memorandum submitted to the court concerning the issues of estoppel and *laches*. Such reference in the memorandum was insufficient to submit the claim of interest to the trial court, and therefore such claim cannot be advanced on appeal.

Plaintiff also urges that she should be awarded attorney's fees for costs incurred both at trial and on appeal. In this case it does not appear that the trial court made any attempt to determine the propriety of awarding attorney's fees given the fact it had dismissed the plaintiff's complaint. Since the judgment of the trial court is being reversed and the matter remanded to the court for further proceedings in this case, upon remand the plaintiff may seek a hearing on the allowance of attorney's fees, pursuant to section 508 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 508).

For the foregoing reasons, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

NASH and UNVERZAGT, JJ., concur.