**FEDERAL DEPOSIT INSURANCE CORP., Plaintiff,**

v.

**Marvin JURON, Defendant,**

v.

**Paul HELLER, as Chairman of the Marvin Juron/Juron Development Creditors' Committee, Citation Defendant,**

v.

**MARVIN JURON/JURON DEVELOPMENT CREDITORS' COMMITTEE, Intervenor,**

v.

**CONTINENTAL ILLINOIS NATIONAL BANK, Garnishee Defendant.**

No. 85 C 1510.

United States District Court, N.D. Illinois, E.D.

March 7, 1989.

Beverly Klein, Janice M. Powell, Mayer, Brown & Platt, for plaintiff.

Pamela J. Leichtling, Paul M. Heller, Paul M. Heller & Associates, Ltd., Chicago, Ill., for Marvin Juron/Juron Development Creditors Committee and Paul M. Heller.

## ORDER

NORGLE, District Judge.

This matter comes before the court on the motion of plaintiff, Federal Deposit Insurance Corp. ("FDIC"), for entry of a turnover order and other relief in its supplementary proceeding against defendant, Marvin Juron; citation defendant, Paul Heller, as Chairman of the Marvin Juron Creditors' Committee; intervenor, Marvin Juron/Juron Development Creditors' Committee; and garnishee defendant, Continental Illinois National Bank. For the following reasons, the FDIC's motion for a turnover order is granted and all other relief is denied.

## FACTS

On September 4, 1985, the court entered summary judgment in favor of the FDIC in its action for breach of a promissory note against Juron for $300,000.00 plus costs, interest and fees. The court denied Juron's motion to vacate the judgment on February 8, 1986. A citation to discover assets was issued on February 13, 1986 and served upon Juron on February 18, 1986.

Apparently, Juron, financially distressed, called a meeting of his creditors in September, 1984. It was determined that Juron and Juron Development had more than 50 creditors who were owed in the aggregate approximately $4.4 million. Eventually the Creditors' Committee was formed, with Heller as chairman. However, there was no written agreement establishing the Creditors' Committee, selecting Heller as chairman or setting forth Heller's responsibilities. At various times from September, 1984 until October, 1986, the Creditors' Committee met and discussed the form of an agreement. The FDIC was not a member of the Creditors' Committee, though through counsel it communicated with the Creditors' Committee, attended certain Creditors' Committee meetings and partici-

pated in drafting an agreement between Juron and his creditors.

Juron asserts that on April 8, 1986, he executed and delivered a composition agreement to the Creditors' Committee. This agreement is not before the court. The only agreement before the court executed by Juron is entitled "Composition Agreement" and dated 4/30/86. Response of Defendant, Marvin Juron, in Opposition to Plaintiff, Federal Deposit Insurance Corp.'s Motion for Entry of Turnover Order ("Juron's Response"). In it Juron promises, among other things, to deposit with the Creditors' Committee the sum of $128,055.57 (the "Funds"), which was the proceeds of an action entitled *Fairway Shopping Center v. Vanguard Insurance Company,* to be distributed amongst his creditors pro rata. However, section 8 of the Composition Agreement provides: "[t]his Agreement shall not become effective unless and until it is signed and delivered by each creditor set forth on exhibit A." Exhibit A lists 52 creditors. The Composition Agreement further requires each creditor to execute a satisfaction of judgment or release of claim in favor of Juron.

On April 9, 1986, the day before his citation examination was conducted, Juron delivered to Paul Heller, as chairman of the Creditor's Committee, a check representing the Funds, payable to the "Creditors' Committee for Marvin Juron & Juron Development Corp." for distribution to Juron's creditors pursuant to the Composition Agreement. Affidavit of Marvin Juron. The memo portion of the check states that it is "Pursuant to Composition of Creditors' Agreement 4/8/86." Heller informed the members of the Creditors' Committee of his acceptance of the Funds "with the understanding that they will be used in conjunction with a Composition Agreement which will eventually be executed by all creditors." Answer of Paul M. Heller, as Citation Respondent to the Citation to Discover Assets of the FDIC ("Heller's Answer") Exhibit C letter of April 19, 1986. The check was negotiated, and the Funds eventually deposited at Continental Illinois National Bank in account number 10746020, with Heller as the sole signatory. The Funds, with interest, currently amount to approximately $145,070.48.

Subsequent to his transfer of the Funds, Juron was indicted on a federal offense. In September, 1986, Juron demanded the return of a portion of the Funds in order to pay for his criminal defense. Heller informed the general creditors of Juron's indictment, Juron's demand for the return of the Funds and his opinion that "a composition agreement cannot be effected at this time." Heller's Answer, Exhibit F. Heller asserts that during a Creditor's Committee meeting on October 16, 1986, the agreement between Juron and his creditors was modified to provide for an additional cash payment by Juron, in the event Juron was acquitted, to replace a worthless cause of action which Juron had conditionally assigned to his creditors. In return, the Creditors' Committee "agreed that it would forebear from prosecuting its individual claims pending the outcome of the criminal trial." However, the distribution of Funds would still be "pursuant to the Composition Agreement." Heller's Answer ¶ 16, Exhibit J.

In April, 1988, Juron, having been convicted, again demanded the return of a portion of the Funds in the Creditor's Committee's possession in order to pay for his appeal. Juron's claim of ownership of the Funds was that, as the Composition Agreement was never successfully concluded, the Creditors' Committee held the Funds merely as a custodian. Heller's Answer, Exhibit I. The Creditors' Committee met on April 27, 1988, considered Juron's request, concluded that the Funds belonged to it and refused to return them to Juron. Heller asserts the Funds were tendered to the Committee in return for the creditors' forebearance to prosecute their separate actions. Heller's Answer ¶ 21, Exhibit J.

In March, 1988, Heller was served with a citation to discover assets by the FDIC. On April 10, 1988, an affidavit for a non-wage garnishment was issued and served upon Continental Illinois National Bank. Continental Illinois National Bank, relying on information from Juron and Heller, an-

swered that the funds do not belong to Juron, but rather are the property of the Creditors' Committee.

Heller, Heller's Answer ¶ 25, and the Creditors' Committee, Intervenors' Complaint ¶ 7L, assert that Heller has received many executed Composition Agreements and covenants not to sue, thereby acknowledging that the Composition Agreement has not been executed by each creditor required to do so by Section 8 of the Composition Agreement.

## DISCUSSION

The FDIC asserts that the agreement between Juron and his creditors was actually an Assignment for Benefit of Creditors ("ABC") which was either never effective or, if effective, was invalid for incorporating conditions onerous to creditors. Of course, Heller, the Creditors' Committee and Juron (hereinafter collectively the "claimants") disagree. Heller does not deny the FDIC's allegation that the Composition Agreement was ineffective; but rather, claims that the FDIC is estopped from asserting that the Funds do not belong to the Creditors' Committee. The Creditors' Committee, in its Intervenor's Complaint simply, asserts that the Funds belong to it, presumably based upon the Composition Agreement. Juron asserts that the indorsement and delivery of the check representing the Funds to the Creditors' Committee was a valid absolute assignment of the Funds, that the agreement between Juron and his creditors was a composition and not an ABC and thus the FDIC's challenges to the agreement's validity based upon the law governing assignments must fail, and finally that the FDIC is estopped from denying that the Funds belong to the Creditors' Committee.

The FDIC and the claimants do not disagree on the operative facts, only their legal significance. Thus, a hearing to resolve the dispute over the Funds, *see* Fed. R.Civ.P. 69(a); Ill.Rev.Stat. ch. 110, ¶ 12–710 (1987), is unnecessary. The court determines as a matter of law that the Funds are the property of Juron, not the Creditors' Committee, and thus are subject to garnishment by the FDIC while in the hands of Continental Illinois National Bank. *See Ehret v. Eaton, Yale & Towne, Inc.,* 523 F.2d 280, 283 (7th Cir.1975) (estoppel may be determined as a matter of law).

### *The Funds Remain the Property of Juron*

■ The court need not determine whether the agreement is an ABC or a composition, for in either case the court would conclude that the Funds remain the property of Juron. However, a brief discussion of ABC's and compositions is necessary to explain why an effective transfer of the Funds has not occurred.

An ABC "is a voluntary transfer by a debtor of his property to an assignee in a trust for the purposes of applying the property or proceeds thereof to the payment of his debts and returning the surplus, if any, to the debtor." *Ill. Bell Tel. Co. v. Wolf Furniture House, Inc.,* 157 Ill.App.3d 190, 194–95, 109 Ill.Dec. 277, 279–80, 509 N.E.2d 1289, 1291–92 (1st Dist.1987). An ABC must be supported by a writing evidencing the trust agreement and delineating the trustee's duties. *See Black v. Palmer,* 15 Ill.App.2d 207, 216, 145 N.E.2d 797, 801 (1st Dist.1957); *Ill. Bell Tel. Co.,* 157 Ill. App.3d at 194–96, 109 Ill.Dec. at 280–82, 509 N.E.2d at 1292–94 (oral assignment of accounts receivable under purported ABC ineffective). This requirement prevents fraud. It is true that, in other contexts, oral express trusts have been upheld where the evidence is so clear and convincing as to support but one conclusion. *Price v. State,* 79 Ill.App.3d 143, 148–49, 34 Ill.Dec. 690, 696, 398 N.E.2d 365, 371 (1st. Dist. 1979). However, where the parties to an attempted ABC fail to satisfy the writing requirements, Illinois courts have not allowed the parties to fall back on an oral trust. *Ill. Bell Tel. Co.,* 157 Ill.App.3d at 197–99, 109 Ill.Dec. at 281–83, 509 N.E.2d at 1293–95.

An ABC passes legal and equitable title to the property absolutely from the assignor to the assignee. *Id.* Thus, a judgment creditor of an assignor judgment-debtor cannot reach property of the assignor judg-

ment-debtor after it has been transferred to an assignee under a valid ABC. *Bach v. Weiner & Sons, Inc.*, 6 Ill.App.2d 284, 284, 127 N.E.2d 279, 279–80 (1st Dist.1955). However, an ABC is invalid and unenforceable against nonparticipating creditors where it requires a creditor's acceptance of a pro rata share of the amount owed in full settlement. *See Gessler v. Myco Co., Inc.*, 29 Ill.App.2d 227, 229, 172 N.E.2d 503, 504–06 (2d Dist.1961); *Tribune Co. v. R. & J. Furniture Sales, Inc.*, 20 Ill.App.2d 370, 373, 155 N.E.2d 844, 846 (1st Dist.1959); *Tribune Co. v. Canger Floral Co.*, 312 Ill.App. 149, 157, 37 N.E.2d 906, 909–10 (1st Dist.1941).

A composition is an agreement between a debtor and several of his creditors in which the creditors agree to accept payment of a sum less than the debts owing to them in full settlement of their respective claims. *See A.H. Lithoprint, Inc. v. Bernard Dunn Advertising Co.*, 82 Ill.App.2d 409, 412–13, 226 N.E.2d 483, 485 (1st Dist.1967). The terms of a composition bind only consenting creditors, leaving nonconsenting creditors free to pursue judicial remedies. *See Vinylast Corp. v. Gordon*, 10 Ill.App. 3d 1043, 1048, 295 N.E.2d 523, 527 (1st Dist.1973).

That the agreement is labeled a "Composition Agreement" does not control the court's characterization of it. Juron in one breath asserts both that the funds were absolutely assigned and that the agreement is a composition because no assignment took place. Juron's characterization of the agreement as a composition is understandable, for if it is an ABC it is invalid on two grounds: first, that the assignment of Funds was conditioned on unanimous acceptance by Juron's creditors, which has not occurred; and second, that, even if the assignment had effectively transferred the Funds, the ABC is voidable as to the FDIC, due to the requirement of releases and covenants not to sue. Juron's characterization of the agreement as a composition is contradicted by Heller's curious testimony that the creditors did not intend the pro rata distribution of the Funds to be payment in full. Heller's Answer, Exhibit K at 17.

If the agreement is characterized as a composition, the claimants still have not eluded the grasp of the FDIC. A composition may be immediately enforceable against a creditor once executed –meaning the creditor may be forced to accept the agreed sum as payment in full. Yet, the funds used to make the payments to the participating creditors remain the property of the debtor until payment is made, unless there is an assignment. If the composition did not involve an assignment, as Juron asserts, then Heller, as Creditors' Committee Chairman, holds the Funds solely as custodian.

The claimants seem to argue that the agreement is some sort of hybrid—a composition in which the distribution is made by an assignee holding the Funds in trust. There is no support for the existence of this sort of arrangement in Illinois law, as it is simply an attempt to sidestep the law governing ABC's. Even if the court were to recognize such an arrangement, which it does not, the court is still not persuaded by the argument that the Funds were absolutely assigned to the Creditors' Committee with Juron retaining no interest in them. The Composition Agreement, under which Juron transferred the Funds to Heller, as Creditors' Committee chairman, controls the transfer of the funds, not the check, which in any event incorporates the Composition Agreement. The Composition Agreement, § 8, specifically provides that it does "not become effective unless and until it is signed and delivered by each creditor set forth on Exhibit A." Heller and the Creditors' Committee acknowledge that this condition to the agreement has not been satisfied. All other evidence of Juron's intent at the time of the transfer is consistent with the terms of the Composition Agreement.

The claimants have also failed to prove modification of Juron's original agreement with his creditors under which there was an unconditional assignment of the Funds. There is no writing before the court evidencing this unconditional assignment. The original Composition Agreement cannot satisfy the writing requirement. Even

if the court were to recognize an oral trust under these circumstances, which it does not, the evidence before the court certainly is not clear and convincing evidence of an assignment creating a trust. Rather, the evidence submitted by the Claimants does not suport such an "agreement", only over-reaching by the Creditors' Committee. In trouble with the law, Juron twice demanded return of a portion of the Funds for his criminal defense on the grounds that the agreement was ineffective. Juron's demand for return of the Funds in April, 1988, based upon ineffectiveness of the Composition Agreement, and ¶ 16 of Heller's Answer, directly contradict the claim that a modification of the agreement in October, 1986 absolutely transferred the Funds in return for creditor forebearance. The Creditors' Committee simply ignored that the transfer of the Funds was conditional, asserted ownership of the Funds and refused to return them. Eventually Juron had no choice but to accede to the Creditors' Committee. That he continues to do so may be in part explained both by the possibility that his debts may be non-dischargeable and the benefits to him if the Funds are distributed in full settlement among the participating creditors, rather than to the FDIC. Heller's Answer, Exhibit J.

Since the condition under which Juron transferred the Funds has not been satisfied, the Composition Agreement is ineffective and the Funds revert to Juron. *See, e.g., Local 165 v. Bradley,* 149 Ill.App.3d 193, 205, 102 Ill.Dec. 20, 28, 499 N.E.2d 577, 585 (1st Dist.1986) (if condition is not satisfied contractual obligations cease).

### *The FDIC Is Not Estopped*

■ The court also finds as a matter of law that the FDIC is not estopped from asserting either that the Composition Agreement is ineffective or that the Funds are not the property of the Creditors' Committee. Neither Heller nor Juron cite any law supporting their estoppel argument. Thus, a brief review of the law of estoppel is in order. "To be estopped, a party must engage in conduct which reasonably causes the other person to change his position by lulling the claimant into a false sense of security." *See Bd. of Directors of Carriage Way Property Owners Assoc. v. Western Nat'l Bank of Cicero,* 139 Ill. App.3d 542, 549, 94 Ill.Dec. 97, 102, 487 N.E.2d 974, 979 (1st Dist.1985), *citing Phillips Products Co. v. Industrial Comm.,* 94 Ill.2d 200, 205, 68 Ill.Dec. 500, 502, 446 N.E.2d 234, 236 (1983); *see also American States Ins. Co. v. Action Fire Equip., Inc.,* 157 Ill.App.3d 34, 40, 109 Ill.Dec. 258, 261, 509 N.E.2d 1097, 1100 (2d Dist.1987). The conduct or promise must have been unambiguous and reliance by the party to be estopped reasonably foreseeable. *Pudil v. Smart Buy Inc.,* 607 F.Supp. 440, 444 (N.D.Ill.1985).

Neither Heller, the Creditors' Committee, nor Juron assert that the FDIC unambiguously promised not to enforce its judgment against Juron. They only assert that the FDIC, knew that the Funds were being held by the Creditor's Committee and, as a substantial general creditor, communicated with Creditors' Committee representatives, attended creditors' meetings and reviewed a draft of the Composition Agreement. Deposition of Pual M. Heller at 9–10.

As a matter of law this is not conduct which could give rise to estoppel. The FDIC's conduct was consistent with keeping informed on the progress of any out of court arrangement Juron might reach with his creditors so that the FDIC could make an informed decision as to whether it was more economical to participate in any distribution to creditors or to attempt to enforce its judgment against Juron. FDIC Reply, letter of July 1, 1986. As a matter of law, the FDIC could not have reasonably foreseen that Juron or any of his creditors could have relied on its behavior. To estop the FDIC from denying the effectiveness of the Composition Agreement on this basis would discourage out of court arrangements with creditors, as creditors would hesitate to inquire into such arrangements for fear of being estopped from resorting to judicial remedies. This would be contrary to this state's policy of encouraging such out of court arrangements. *See Ges-*

**1122**

*sler*, 29 Ill.App.2d at 229, 172 N.E.2d at 504.

Furthermore, the exhibits attached to Heller's Answer belie his assertion that the FDIC by its conduct should be estopped from denying that the Funds belong to the Creditors' Committee. Heller's Answer, Exhibits G and H. The correspondence from counsel for the FDIC to Heller does not acknowledge that the Funds belong to the Creditors' Committee. Rather, they make it clear that the FDIC has not consented to any agreement and was reserving its rights to collect upon its judgment. Heller's Answer, Exhibits A and L.

Juron and any creditor who participated in the agreement did so with knowledge of the risk that any other creditor could block the agreement by refusing to participate. Many did refuse. The FDIC could not have lulled other creditors into a false sense of security. *See Western Nat'l Bank*, 139 Ill.App.3d at 549, 94 Ill.Dec. at 102, 487 N.E.2d at 979. Finally, neither Juron nor the participating creditors could have reasonably relied solely on the FDIC's forebearance from executing its judgment. *See Ruster v. Ruster*, 91 Ill.App.3d 355, 358, 46 Ill.Dec. 874, 878, 414 N.E.2d 927, 931 (2d Dist.1980) (estoppel not brought about by mere passage of time).

### CONCLUSION

Heller, as Creditors' Committee Chairman, was simply the custodian of the Funds until an arrangement with Juron's creditors became effective. As no agreement became effective before the FDIC commenced its garnishment, the Funds remain the property of Juron and are subject to garnishment in the hands of Continental Illinois National Bank. *See Ill. Bell Tel. Co.*, 157 Ill.App.3d at 197, 109 Ill.Dec. at 281, 509 N.E.2d at 1293.

The FDIC's motion for a turnover order is granted. The relief requested in the Intervenors' Complaint is denied. The Creditors' Committee, Heller and Continental Illinois National Bank are ordered to

transfer the Funds to the FDIC within seven days.

IT IS SO ORDERED.