BARBARA D. BLISSET, k/n/a Trueblood, Appellee, v. ALLEN R. BLISSET, Appellant.

*Opinion filed June 20, 1988.*

RYAN, J., concurring in part and dissenting in part.

Wm. Stanley White, of Springfield, for appellant.

William J. Thomas, of Peoria, for appellee.

JUSTICE MILLER delivered the opinion of the court:

The plaintiff, Barbara D. Blisset (Barbara), filed a petition in the circuit court of Sangamon County alleging that her former husband, Allen R. Blisset (Allen), the defendant, was delinquent in his payments for the support of their two children. Barbara also sought an increase in child support, and college expenses for the children. Allen maintained that Barbara had released his child support obligation in exchange for his agreement to surrender his child visitation rights. Following a hearing, the circuit court denied Barbara's claim for delinquent child support, but ruled that Allen would be liable for future support payments in an amount slightly above that established in the divorce decree. The court reserved ruling on liability for college expenses; after a subsequent hearing, the court ordered Allen to pay $1,000 per year toward the college expenses of the older child, and to pay the medical and dental expenses of the children.

Both parties appealed the circuit court's rulings. A divided appellate court affirmed in part, reversed in part, and remanded the case to the trial court, suggesting that the agreement asserted by Allen violated public policy. (144 Ill. App. 3d 1088.) This court allowed Allen's petition for leave to appeal, pursuant to Rule 315. 107 Ill. 2d R. 315.

A divorce decree was entered by the circuit court of Sangamon County on December 23, 1975, ending the marriage of Allen R. Blisset and Barbara D. Blisset. In the decree, the court apportioned the marital property between Allen and Barbara and awarded custody of the parties' two children to Barbara, subject to Allen's right to reasonable visitation. The decree provided that Allen

was to pay $40 per week for the support of the children, plus their medical, dental and hospital expenses.

Difficulties arose between the parties as to Allen's visitation with the children. Allen petitioned the court in March 1976 to establish a defined visitation schedule. The court modified the original divorce decree to grant Allen visitation on alternate weekends and specified holidays.

In March 1984, Barbara Blisset filed a petition in the circuit court contending that Allen was delinquent in paying the child support ordered in the divorce decree. Noting that Allen's income had increased substantially since the time of the divorce, the petition sought an increase in the $40 per week amount to be paid in the future as child support. The petition also requested that Allen be held responsible for the reasonable college expenses of the children.

At a hearing on the petition, Allen stated that he had paid $2,080 of the $2,960 that had accrued for child support between the December 1975 divorce decree and June 1977, while Barbara alleged that he had paid only $1,780. Evidence presented by both parties, however, revealed that in June 1977, Allen and Barbara had entered into an agreement concerning child support. Under the agreement, Barbara dropped charges then pending against Allen for past-due support, and Allen agreed to relinquish his right to visitation with the children in the future. Both Allen and Barbara understood the agreement to be a waiver by Barbara of future child support, in exchange for, Barbara testified, Allen's leaving her and the children alone. Evidence presented suggests that, before the agreement, Allen's attempts at visitation were, at times, inhibited by Barbara. Barbara had remarried prior to the agreement and, together with her new husband, was supporting the children.

The record reveals that the parties did not communicate with one another until August or September of 1982, when Allen contacted Barbara. Soon thereafter, Allen began to visit the children, apparently with Barbara's acquiescence. Subsequently, Barbara filed the instant petition seeking delinquent child support and future support.

At the conclusion of the hearing on the petition, the trial judge found that Allen had relied upon the voluntary agreement with Barbara, relinquishing his right to visitation with his children in return for a termination of his support obligation. The trial judge noted, however, that Allen had reinitiated visitation with the children in 1982. The trial judge declined to find Allen delinquent in his child support payments. The judge declared, however, that although Allen had remarried and had three children in his second marriage, Allen's obligation to support his two children from his first marriage remained. On July 10, 1984, the trial judge ordered Allen to commence child support payments of $100 per child per month, effective August 1, 1984. The trial judge reserved ruling on college expenses until Tina, the older of the parties' children, made definite college plans. Following a later hearing on this issue, the trial judge directed Allen to pay $1,000 per year toward Tina's college expenses. Allen was also directed after the later hearing to pay the children's medical and dental expenses not covered by insurance. The trial judge denied Barbara's request for attorney fees.

Both parties appealed the trial court's rulings. The appellate court affirmed the order directing Allen to pay the medical and dental expenses of the children, and $1,000 of Tina's college expenses. The appellate court also affirmed the denial of Barbara's request for attorney fees. The court found, however, that establishing child support at the total amount of only $200 per month

was an abuse of the trial court's discretion. In addition, a majority of the appellate panel held that the parties' agreement to waive child support in exchange for Allen's giving up his right of visitation would not be enforced, suggesting that such an agreement was contrary to public policy. The majority concluded that Barbara was entitled to recover delinquent child support owed from the divorce decree to the time the petition for child support was filed. One justice concurred with the majority opinion, except with regard to the past support delinquency. The justice, dissenting on the support question, believed that Barbara was estopped from claiming past support from the time the parties entered into the agreement until Barbara filed the petition for support in March 1984.

At issue is whether the agreement to terminate child support payments, in exchange for the waiver of the noncustodial spouse's child visitation rights, is enforceable. If the agreement is not enforceable, we must determine whether Barbara Blisset, the parent retaining custody, has been equitably estopped from collecting delinquent child support payments.

The modification of a child support obligation is a judicial function, administered exclusively by the court as a matter of discretion. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 329.) The court is obligated in marital dissolution proceedings to protect the best interests of the children involved. (See Ill. Rev. Stat. 1983, ch. 40, par. 602; see also Ill. Rev. Stat. 1983, ch. 40, par. 502.) Moreover, although property disposition agreements between spouses are binding upon the court, unless unconscionable, in marital dissolution proceedings, the court is not bound by agreements providing for the support, custody, and visitation of the children. (Ill. Rev. Stat. 1983, ch. 40, par. 502(b).) Allowing former spouses to modify a court-ordered child support obligation by creating a new agreement between themselves without judicial approval

would circumvent judicial protection of the children's interests. Former spouses might agree to modify child support obligations, benefiting themselves while adversely affecting their children's best interests. Parents may not bargain away their children's interests. (See *Huckaby v. Huckaby* (1979), 75 Ill. App. 3d 195, 199; *Anthony v. Anthony* (Iowa 1973), 204 N.W.2d 829, 833.) It is for this reason, then, that parents may create an enforceable agreement for modification of child support only by petitioning the court for support modification and then establishing, to the satisfaction of the court, that an agreement reached between the parents is in accord with the best interests of the children. See *Finley v. Finley* (1980), 81 Ill. 2d 317, 329; *Hart v. Hart* (Mo. App. 1976), 539 S.W.2d 679.

In the present cause, Allen and Barbara agreed to waive future child support payments in exchange for Allen's giving up his future visitation with the children. The parties did not attempt to safeguard the children's interests by establishing in court, prior to the initiation of the agreement, that the children would have adequate financial support, and that ending visitation was not detrimental to the children. Because Allen and Barbara failed to obtain judicial approval of their agreement, but rather usurped the judicial function by modifying the court-ordered child support obligation themselves, their agreement is not enforceable.

Allen contends that despite the lack of an enforceable agreement, Barbara should be equitably estopped from collecting child support arrearages. Allen argues that the appellate court has recognized that the doctrine of equitable estoppel can be applied to prevent former spouses from collecting support payments in appropriate cases, and alleges that the facts in this case fulfill the criteria for equitable estoppel. (See *Anderson v. Anderson* (1964), 48 Ill. App. 2d 140; *Strum v. Strum* (1974), 22

Ill. App. 3d 147; *Bartlett v. Bartlett* (1979), 70 Ill. App. 3d 661; *Ruster v. Ruster* (1980), 91 Ill. App. 3d 355.) Barbara contends that Allen cannot rely on the principle of equitable estoppel because he was not led by her statements or conduct to enter into the agreement in 1977.

A claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person. (*Dill v. Widman* (1952), 413 Ill. 448, 455-56.) The party asserting a claim of estoppel "must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the true facts" (*Dill*, 413 Ill. at 456), and such reliance should be reasonable. *Rockford Life Insurance Co. v. Department of Revenue* (1986), 112 Ill. 2d 174, 185.

We believe that Allen has failed to establish the elements necessary to support a claim of equitable estoppel. Allen, while testifying about the 1977 agreement during the 1984 hearing, stated that a State's Attorney told him that "you cannot give up your visitation because *** you are still legally their father so we cannot strike visitation from you." Because Allen was put on notice in advance of his agreement with Barbara that he could not give up his visitation rights, his subsequent reliance on Barbara's agreement to forego child support payments in return for the forfeiture of his rights to visitation was unreasonable.

Further, we do not believe that forfeiting visitation rights and failing to anticipate unpaid support payments can constitute the detriment required to establish an equitable estoppel claim. To allow these reasons to suffice as a detriment, sufficient to establish estoppel, would allow Barbara and Allen, and others in similar circumstances, to look past the best interests of their chil-

dren and, by their own agreement, frustrate the intent of child support and visitation orders. Such a result is untenable because it would circumvent and undermine a court's role in the establishment and modification of a child support obligation. (See *Finley v. Finley* (1980), 81 Ill. 2d 317, 329; Ill. Rev. Stat. 1983, ch. 40, par. 505.) We have already held that such agreements are unenforceable. Moreover, as we noted earlier, parents may not bargain away their children's interests; a mother's violation of visitation terms does not excuse the father's failure to comply with the alimony and child support terms. (*Huckaby v. Huckaby* (1979), 75 Ill. App. 3d 195, 198-99; *Cooper v. Cooper* (1978), 59 Ill. App. 3d 457, 464.) We hold, therefore, that Allen has failed to establish that he relied, to his detriment, on the 1977 agreement, and that Barbara is not estopped from seeking to recover delinquent child support payments.

Allen further contends that Barbara should be prevented from recovering any delinquent child support under the equitable doctrine of *laches*. Allen argues that Barbara is barred from seeking relief because she delayed instituting a lawsuit against him for the almost seven years he did not make any child support payments. *Laches* is not available as a defense, however, unless the party asserting the doctrine has suffered injury or prejudice as a result of the other party's delay in instituting an action. (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 553.) As this court has previously noted, "a spouse is not injured because he is forced to pay the accumulated support in one lump sum as opposed to weekly payments as ordered." (*Finley v. Finley* (1980), 81 Ill. 2d 317, 330.) For this reason, *laches* does not bar Barbara from recovering delinquent child support owed by Allen.

Allen contends that the trial court erred in directing him to pay $1,000 per year toward the college expenses of his daughter, Tina. Under section 513 of the Illinois

Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 513), the trial court is authorized to require either or both parents to contribute to the educational expenses of the children. The trial court was within its discretion in ordering Allen to assist in paying for his daughter's college education. *In re Support of Pearson* (1986), 111 Ill. 2d 545.

Allen next maintains that the trial court improperly required him to pay the medical and dental expenses of the children. We note initially, however, that Allen was held responsible for the medical, dental and hospital expenses of the children under the original divorce decree, so the trial court has imposed no new obligation on Allen. In addition, it was within the sound discretion of the trial judge, after considering the evidence of the respective financial circumstances of the parties, to determine that Allen was better able to meet the medical, dental and hospital expenses of the children. Allen presented no evidence mandating a contrary result.

Finally, Allen argues that the trial court's award of future child support of $100 per month per child was excessive, while Barbara contends that the appellate court correctly reversed the trial court's award of future child support as an abuse of the trial court's discretion for being too small an amount.

The trial judge conducted a hearing at which evidence of the parties' income and expenses, both present and anticipated, was offered. We find that, prior to modifying the support obligation, the trial judge properly considered those factors in section 505 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 505) which were in effect at the time of the support modification order. The judge stated that the $100 support per month figure for each of the two children reflected Allen's increased income, as well as his present family obligations. (See Ill. Rev. Stat. 1983,

ch. 40, par. 505(a)(5).) Although section 505 now contains guidelines to determine what percentage of a non-custodial parent's income should be used for child support, these guidelines did not take effect until September 12, 1984, subsequent to the filing of the trial judge's July 10, 1984, support order. The trial judge took note of the statutory percentage guidelines in the later hearing on college expenses, but declined to apply them to the earlier support order in view of their effective date.

We note that in addition to the $200 per month support payment for both children, Allen was ordered to pay the medical, dental and hospital expenses of both children. The record indicates that orthodontic treatment has been recommended for each child, with a cost of $2,100 per child, with $600 to be paid initially for each child, followed by payments of $60 per month per child for 25 months. In addition, Allen was ordered to pay $1,000 for Tina's college expenses; this amount, spread over 12 months averages over $83 per month. Allen also may be required to contribute to the college expenses of the parties' younger child, Robert. We cannot conclude that the trial judge's modification of support to $100 per month per child was an abuse of discretion when coupled with Allen's other support obligations to the children. We reverse the appellate court's holding that the trial court abused its discretion in modifying the child support payments and affirm the circuit court's order on this point.

Accordingly, we reverse that portion of the judgment of the appellate court reversing the circuit court's modification of child support payments and affirm the circuit court's order modifying such payments. We affirm that portion of the judgment of the appellate court reversing the order of the circuit court denying the claim for delinquent child support payments. We further affirm that portion of the appellate court judgment affirming the

trial court order directing Allen to pay medical, dental and hospital expenses and $1,000 of the older child's college expenses. The cause is remanded to the circuit court for a calculation of the amount of the delinquent child support payments to which Barbara is entitled.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; cause remanded with directions.*

JUSTICE RYAN, concurring in part and dissenting in part:

I concur in the opinion of the court, except that part of the opinion which holds that the defendant, Allen R. Blisset, must pay to his former wife, Barbara, delinquent child support payments. In my opinion, Barbara is equitably estopped from collecting delinquent support payments from the defendant from the date of her agreement with her husband in June 1977, until she initiated these proceedings in March 1984.

This court held in *Finley v. Finley* (1980), 81 Ill. 2d 317, that the husband in that case could not unilaterally reduce support payments which the court had ordered. It has also been held that past-due installments of child support are vested rights. (*Doty v. Doty* (1977), 45 Ill. App. 3d 213; *Escott v. Escott* (1975), 26 Ill. App. 3d 417; *Strum v. Strum* (1974), 22 Ill. App. 3d 147.) However, in the case now before this court, support has been provided to the children by Barbara, the defendant's former wife. She is not now seeking to recover support for the benefit of the children, but she is seeking reimbursement to herself for the support which she has provided, which should have been, according to the decree, provided by the defendant. In cases such as this, it has been held that the doctrine of equitable estoppel may be applied, under proper circumstances, to prevent a former wife

from collecting from her former husband child support payments that had been ordered by the court. (*Strum v. Strum* (1974), 22 Ill. App. 3d 147, 149; *Anderson v. Anderson* (1964), 48 Ill. App. 2d 140.) The doctrine of equitable estoppel has been recognized as a defense in certain situations. See *Finley v. Finley* (1980), 81 Ill. 2d 317, 330; *Escott v. Escott* (1975), 26 Ill. App. 3d 417, 419; *Baldwin v. Baldwin* (1974), 21 Ill. App. 3d 380, 382. See also Annot., 70 A.L.R.2d 1250 (1960).

The trial court, in this case, found that the defendant had relied upon the agreement with his former wife, relinquishing his visitation rights in return for a termination of support payments. The evidence supports the finding of the existence of this agreement and the reliance on the agreement by the defendant. Furthermore, Barbara's failure to attempt to enforce the support payments from the date of the agreement until her former husband attempted to resume visitation with his children several years later is proof that she understood that such an agreement existed.

This would appear to be a classic example of a situation where the doctrine of equitable estoppel should apply. There is no indication in this case that the children of the defendant will in any way benefit from the payment of the delinquent support, nor is there any indication that any public agency has provided support for the defendant's children, which would establish a claim against the delinquent payments. The only person who will benefit from the holding of the majority opinion is Barbara, and she is the one who agreed that the defendant would not have to make the payments she now seeks to collect. In reliance on this agreement, the defendant gave up his visitation rights.

I would agree with the well-written dissent in the appellate court in this case and hold that Barbara is estopped from claiming support payments that accrued

after the agreement in June 1977, until the date she terminated her acquiescence in that agreement by initiating these proceedings in March 1984.

There is language in the above-cited cases, and in *Jones v. Meade* (1984), 126 Ill. App. 3d 897, to the effect that a former spouse is not damaged by being required to pay past-due payments in one lump sum. That language just does not recognize the realities of the budgeting process, in either a business or a family context. It is not practical to say that a person is not damaged when, in reliance upon an agreement with his former spouse, he allocates resources that otherwise would be applied to court-ordered support payments to other obligations, only to learn several years later that his reliance upon the agreement was misplaced and that he is suddenly required to pay several thousand dollars in back support payments. In most instances, raising a substantial lump-sum payment would be difficult and in some instances impossible.

For the reasons stated herein, I concur in part and dissent in part from the majority opinion.