In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-2856

IN RE: STEPHANIE A. BROOKS,

*Debtor-Appellee.*

APPEAL OF: MICHAEL D. CLARK,

*Chapter 13 Trustee-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois, Peoria Division.
No. 1:14-cv-01031 — **Michael M. Mihm**, *Judge.*

ARGUED JANUARY 21, 2015 — DECIDED APRIL 23, 2015

Before BAUER, FLAUM, and WILLIAMS, *Circuit Judges.*

FLAUM, *Circuit Judge.* Chapter 13 of the Bankruptcy Code permits certain debtors to emerge from bankruptcy by dedicating their projected disposable income to the repayment of creditors for a specified period of time. 11 U.S.C. § 1322. Section 1325(b)(2) of the Code allows a Chapter 13 debtor to exclude from the calculation of her disposable income—and thereby shield from her creditors— "child support payments … reasonably necessary to be expended for such child." 11 U.S.C. § 1325(b)(2). In this

appeal, we consider whether this language permits the categorical exclusion from disposable income of the full amount of child support payments received by an above-median debtor.

The bankruptcy and district courts below concluded that any award of child support may be excluded from disposable income except in the rare case in which an award appears so excessive that its exclusion would entail abuse of the bankruptcy system. The bankruptcy trustee, by contrast, contends that a categorical exclusion of child support payments too often results in a duplicate deduction for the debtor because many of the expenses that child support typically covers (e.g., food and housing) are factored into the standardized living expense deductions permitted under other subsections of § 1325. Instead, the trustee would limit any exclusion to specifically documented expenses that are deemed reasonably necessary for the support of minor children and that are not otherwise deductible under § 1325. We agree with the reasoning of the courts below, and we therefore affirm.

## I. Background

The Bankruptcy Code provides for distinct treatment of an "above-median" debtor, an individual whose monthly income exceeds the median income for a household of the same size as the debtor's in the debtor's state of residence. *See* 11 U.S.C. § 1325(b)(3). Above-median debtors must file for bankruptcy under Chapter 13 of the Code, as opposed to the more familiar Chapter 7, the most common form of bankruptcy in the United States. *See* 11 U.S.C. § 707(b)(1)–(2). The practical distinction between proceedings under the two chapters is that individuals who file for bankruptcy relief

under Chapter 7 repay creditors by liquidating their nonexempt assets while those who file under Chapter 13 dedicate a portion of their future income toward the repayment of creditors, usually for a period of three to five years. *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 65 & n.1 (2011). This repayment is governed by the terms of a court-approved Chapter 13 plan.

Stephanie Brooks, an Illinois single mother with two minor children, is one such above-median debtor. Brooks's monthly income totals $6614.50, including $400.00 in child support, which she receives from her ex-husband.[1] On October 4, 2012, Brooks filed for Chapter 13 bankruptcy. Appellant Michael D. Clark was appointed trustee. Chapter 13 employs a statutory formula to calculate the appropriate monthly repayment amount for above-median debtors. This formula yields a debtor's total monthly disposable income, all of which must be devoted to reimbursing creditors. *See* 11 U.S.C. § 1325(b)(1)(B). To compute her disposable income, Brooks completed Official Form 22C, "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income," *available at* http://www.usco urts.gov/uscourts/RulesAndPolicies/rules/BK_Forms_Curre nt/B_22C.pdf (last visited Apr. 23, 2015).

Brooks completed Form 22C as follows: In Parts I through III, she calculated her "Current Monthly Income" ("CMI"), including both her monthly wages of $6214.50 (Line 2) and her $400.00 monthly child support payments

---

[1] Brooks and her ex-husband mutually agreed on this amount, which an Illinois divorce court subsequently approved. Brooks's wages are twice that of her ex-husband and she believed that $400.00 per month was the most that he could reasonably afford.

(Line 7). In Part IV of the form, "Calculation of Deductions from Income," she claimed applicable standardized deductions for living expenses for a household of three people. These adjustments included, among others, deductions for food, apparel and services, housekeeping supplies, and personal care (Line 24A); health care (Line 24B); and housing and utilities (Line 25). To determine her disposable income, *see* Form 22C, Part V, "Determination of Disposable Income Under § 1325(b)(2)," Brooks used her total CMI ($6614.50) as a baseline. From that CMI, she deducted her $400.00 monthly child support payments in response to an instruction directing her to "[e]nter the monthly average of *any child support payments*, foster care payments, or disability payments for a dependent child, reported in Part I, that you received in accordance with applicable nonbankruptcy law, *to the extent reasonably necessary to be expended for such child*." Line 54 (emphases added). She further subtracted the "[t]otal of all [standard] deductions," Line 56, that she had taken under Part IV. After factoring in these deductions, Brooks's monthly disposable income was reduced to $111.46 (Line 59). From this total, Brooks deducted another $141.00 for day care as an "additional expense claim," Line 60, which left her with negative disposable income.

Based on these calculations, Brooks submitted an amended Chapter 13 plan, in which she proposed to pay the trustee $100.00 per month for 60 months. This proposal would have resulted in a 0% distribution to Brooks's unsecured creditors as substantially all payments would have gone to other arrearages, as well as trustee's and attorney's fees. The trustee objected to the proposed plan, arguing that Brooks had miscalculated her disposable

income: he protested that Brooks improperly excluded her $400.00 monthly child support payments from the computation. According to the trustee, by excluding the full amount of her child support payments, Brooks essentially availed herself of a double deduction because most, if not all, of the expenses that child support typically covers (e.g., food and housing) are factored into the standardized deductions permitted elsewhere on Form 22C (e.g., at Lines 24 and 25).

Following an evidentiary hearing, the bankruptcy court concluded that Brooks's monthly child support payments were fully excludable from the calculation of her disposable income. It reached this determination largely by looking to the applicable state law governing child support awards. Under Illinois law, an appropriate child support award is that amount deemed "reasonable and necessary for the support of the child." 750 Ill. Comp. Stat. 5/505(a). Because this "reasonable and necessary" standard mirrors the Bankruptcy Code's requirement that excludable child support be "reasonably necessary to be expended for such child," 11 U.S.C. § 1325(b)(2), the bankruptcy court concluded that the child support awarded by the Illinois divorce court necessarily satisfied the requirements of § 1325(b)(2) and could therefore be excluded in its entirety. The court further noted that although, under its interpretation of § 1325, a double deduction would be theoretically possible, Congress's desire to preserve child support payments for their intended beneficiaries prevailed over any risk of duplicate exclusions from income. Finally, the court concluded that the "reasonably necessary" qualification would still function as an independent backstop—a "hedge against the risk of abuse"—to prevent the excessive reduction of disposable income in cases where

the custodial parent is "so well off that child support payments amount to unneeded surplus funds." *In re Brooks*, 498 B.R. 856, 863 (Bankr. C.D. Ill. 2013). After making other unrelated amendments to Brooks's disposable income calculation, the bankruptcy court confirmed a Chapter 13 plan requiring Brooks to pay $459.00 per month for 60 months. The District Court for the Central District of Illinois, Peoria Division, affirmed the bankruptcy court's order.

## II. Discussion

We apply the same standard of review to bankruptcy court decisions as does a district court, reviewing findings of fact for clear error and conclusions of law de novo. *In re Midway Airlines, Inc.*, 383 F.3d 663, 668 (7th Cir. 2004).

A Chapter 13 debtor's plan will be approved only if it provides that *all* of the debtor's projected disposable income during the repayment period will be applied to the reimbursement of unsecured creditors. 11 U.S.C. § 1325(b)(1)(B). Chapter 13 utilizes a multi-part equation, containing both an income component and an expense component, to calculate disposable income. On the income side of the equation, a debtor must first calculate her total current monthly income, of which child support payments are considered a part. *See* 11 U.S.C. § 101(10A)(B) (explaining that CMI includes any amount paid by third parties "on a regular basis for the household expenses of the debtor or the debtor's dependents"); *see also In re Wise*, No. 10-32441, 2011 WL 2133843, at *3 (Bankr. S.D. Ill. May 27, 2011). Based on this total, the debtor may next exclude certain income from her CMI, pursuant to the specifications set forth in 11 U.S.C. § 1325(b)(2), which describes the income component of disposable income as "current monthly income received by

the debtor (other than *child support payments*, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law *to the extent reasonably necessary to be expended for such child*)." § 1325(b)(2) (emphases added).

The expense component of the equation then allows for a deduction of "amounts reasonably necessary to be expended … for the maintenance or support of the debtor or a dependent of the debtor," and for certain charitable contributions and necessary business expenditures. § 1325(b)(2)(A)–(B). For above-median debtors like Brooks, 11 U.S.C. § 1325(b)(3) calculates "[a]mounts reasonably necessary to be expended under paragraph (2) … in accordance with subparagraphs (A) and (B) of section 707(b)(2)." These subparagraphs—commonly referred to as the "means test"—set forth the standardized living expense deductions available to above-median debtors (corresponding, for instance, to Lines 24 and 25 of Form 22C).[2] 11 U.S.C. § 707(b)(2)(A)–(B); *see also In re Clemons*, No. 08-82968, 2009 WL 1733867, at *4 (Bankr. C.D. Ill. June 16, 2009) ("As an above median debtor, [Clemons's] allowed expense deductions would be determined in accordance with subparagraphs (A) and (B) of Section 707(b)(2),

---

[2] 11 U.S.C. § 707(b)(2)(A)(ii)(I) specifies that "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards." "The National and Local Standards referenced in this provision are tables that the IRS prepares listing standardized expense amounts for basic necessities." *Ransom*, 562 U.S. at 66.

requiring [her] to complete the expense deduction calculations provided by the remainder of Form 22C.").[3]

The income side of the equation explicitly excludes three categories of support payments from the calculation of disposable income: (1) child support payments, (2) foster care payments, and (3) disability payments. In order for these payments to be excluded, however, two conditions must be satisfied: (1) payments must be made in accordance with applicable nonbankruptcy law, and (2) payments are excludable only to the extent that they are *reasonably necessary to be expended for such child.*[4] Here, it is undisputed

---

[3] Chapter 13 bankruptcy is also available to below-median debtors, so long as they have a regular income, unsecured debts totaling less than $383,175.00, and secured debts totaling less than $1,149,525.00. 11 U.S.C. § 109(e); 78 Fed. Reg. 12,089, 12,090 (Feb. 21, 2013). However, the disposable income calculation under § 1325(b)(2) for below-median debtors differs slightly from the calculation for above-median debtors. *See Ransom*, 562 U.S. at 71 n.5 (explaining that only above-median debtors are subject to the standardized "means test" for determining their reasonably necessary expenses, while below-median debtors must "prove on a case-by-case basis that each claimed expense is reasonably necessary"). While there is a strong argument that the question of the categorical excludability of child support payments from the disposable income calculation applies equally to above- and below-median debtors (because the differential treatment of the two classes of debtors occurs only on the *expense* side of the equation, not on the *income* side with which we deal today), we address here only the above-median debtor scenario and save the question of the applicability of our holding to below-median debtors for another day.

[4] While the "reasonably necessary" qualification applies to the exclusion from disposable income of foster care and disability payments in addition to child support payments, our decision today addresses its operation only with respect to child support.

that the $400.00 monthly child support payments are being made in accordance with Illinois domestic relations law. Therefore, the sole question before us is whether the courts below erred in their analysis of the "reasonably necessary" limitation on the exclusion of child support payments.

As explained above, the bankruptcy court determined that, as a general matter, child support payments may be presumed "reasonably necessary," and therefore fully excludable from the calculation of disposable income, except in the rare case where the payments are so excessive in relation to essential expenditures that they cannot be deemed crucial for the support of minor children. The trustee, by contrast, contends that child support payments may not be categorically excluded from the disposable income calculation; rather, the reasonable necessity of those payments must be scrutinized by the bankruptcy court in every case. The trustee insists that the standardized deductions available under § 707(b)(2)(A) and (B) will cover most expenses toward which child support payments are typically dedicated; as a result, it would be unfair to permit Brooks "to assert the higher expense standards associated with a household size of three while at the same time excluding the very support income … which was intended to defray those expenses." Instead, the trustee would reserve exclusion for those documented child-related expenditures that are reasonably necessary but are not otherwise accounted for under § 707(b)(2)(A) and (B)—the standardized expense component of the disposable income test.

We find the trustee's proposal both unnecessary and unworkable. From a textual standpoint, the proposal

disrupts the formulaic approach adopted by § 1325(b)(2). The subsection is structured to *first* allow an above-median debtor to calculate her income (excluding reasonably necessary child support), and *second*, to deduct from that figure standardized living expenses, as defined in § 707(b)(2)(A) and (B). However, if the amount of any child support exclusion were dependent on the § 707(b)(2) calculation, this structure would make little sense: it would be impossible to complete the first step of the calculation (the income component) without first jumping ahead to the second step (the expense component).

From a practical perspective, the trustee's proposal would burden bankruptcy courts by mandating fact-intensive examinations of all child support expenses. Specifically, a bankruptcy court would be required to evaluate each documented, child-related expenditure not covered under the standardized deduction provisions, and make an individualized determination as to whether a given expense was "reasonably necessary." The result would be an exceedingly complicated disposable income calculation. However, Congress amended the Bankruptcy Code in 2005 precisely in order to avoid such complex calculations. Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (codified at 11 U.S.C. § 101 *et seq.*), debtors' reasonable expenditures were calculated on a case-by-case basis, which "required judges to make significant value judgments, leading to a wide diversity of rulings on whether particular expenses were justifiable," *In re Slusher*, 359 B.R. 290, 294 (Bankr. D. Nev. 2007), and resulting in "varying and often inconsistent determinations." *Ransom*, 562 U.S. at 65 (citing *In re Slusher*, 359 B.R. at 294). Following the

BAPCPA's adoption of the standardized means test for above-median debtors, "the determination of disposable income is now meant to be a simple and straightforward matter of arithmetic based on sections 707(b)(2)(A) and (B)." *In re Farrar-Johnson*, 353 B.R. 224, 232 (Bankr. N.D. Ill. 2006). By utilizing the IRS National and Local Standards as a proxy for individualized calculations, the BAPCPA permits debtors to claim expenses "without any judicial consideration of whether those expenses are in fact 'reasonably necessary.'" *Id.* The trustee's proposal would turn this system on its head.

While the trustee correctly notes that Congress amended the Bankruptcy Code to "help ensure that debtors who *can* pay creditors *do* pay them," *Ransom*, 562 U.S. at 64, Congress also accepted that the newly adopted standardized means test might, at times, lead to anomalous results. As the Supreme Court has noted, "this kind of oddity is the inevitable result of a standardized formula." *Id.* at 78 (rejecting criticism that under the BAPCPA, a debtor with a single car payment remaining at the time of filing may take the same standardized "Ownership Costs" deduction as a debtor with many outstanding car payments, while a debtor who makes his final payment just prior to filing is denied any deduction). "In eliminating the pre-BAPCPA case-by-case adjudication of above-median-income debtors' expenses, on the ground that it leant itself to abuse, Congress chose to tolerate the occasional peculiarity that a brighter-line test produces." *Id.*

More importantly, to contend that the BAPCPA's sole purpose was to maximize repayment to creditors ignores the fact that the 2005 amendments also display a special solicitude for children entitled to support payments from a

noncustodial parent. Through several significant amendments to the Code, the BAPCPA evinced a desire to protect intended recipients of domestic support payments. For instance, under the Act, unsecured claims for domestic support obligations moved from seventh to first in the hierarchy of unsecured priority claims. *See* Pub. L. No. 109-8 § 212, 119 Stat. 23, 51 (codified at 11 U.S.C. § 507(a)(1)). The BAPCPA also disallowed delinquent child support obligors the right to use bankruptcy to evade their support obligations. Failure to pay a domestic support obligation is now cause for dismissal from Chapter 13. *See id.* § 213(7)(C), 119 Stat. 23, 53 (codified at 11 U.S.C. § 1307(c)(11)). The trustee's proffered interpretation of § 1325(b)(2)—which would essentially treat child support payments as simply another source of funds available to a custodial parent and, in turn, vulnerable to claims by unsecured creditors—is in tension with Congress's evident concern for the welfare of child support recipients.[5]

The trustee's primary objection to a categorical exclusion of child support payments is that such an exclusion creates a windfall for the custodial parent. However, these concerns are vastly overstated. While there may be a theoretical risk of a double deduction, such duplication is unlikely in

---

[5] Bankruptcy courts have displayed a similar intent to protect child support payments received by debtors. For instance, in *In re Welch*, the United States Bankruptcy Court for the District of Kansas held that under Kansas law, a custodial parent's right to collect child support arrearages does not pass into her bankruptcy estate. *See* 31 B.R. 537, 540 (Bankr. D. Kan. 1983) ("[C]hild support is not a property interest belonging to the custodial parent. The interest is not within the reach of the custodial parent's creditors outside of bankruptcy and thus, should not be within their reach in bankruptcy.").

practice. There are broad categories of "reasonably necessary" child care expenditures that fall outside the categories of standardized deductions available under § 707(b)(2). Such expenditures include, but are not limited to, the cost of school activities, music lessons, toys, summer camps, fees for sports teams and equipment, and tutoring. § 707(b)(2) permits no deduction for any of these common expenses. While the trustee's proposal would not entirely foreclose an exclusion of such expenses from disposable income under § 1325(b)(2), it would demand that bankruptcy courts undertake a cumbersome verification process before endorsing any exclusion.

Furthermore, child support is widely considered inadequate, *see, e.g.*, Marsha Garrison, *The Goals and Limits of Child Support Policy*, *in Child Support: The Next Frontier* 16, 16 (J. Thomas Oldham & Marygold S. Melli eds., 2000), and it certainly appears to be so in Brooks's case. The United States Department of Agriculture estimates that it costs an average of $35,000.00 annually (or nearly $3000.00 per month) for a single parent to raise two young children. *See USDA Calculator Results*, Ctr. for Nutrition Pol'y & Promotion, U.S. Dep't of Agric., http://www.cnpp.usda.gov/tools/CRC_calculator/ default.aspx (last visited Apr. 23, 2015). Brooks's $400.00 child support payments cover only a small fraction of this amount. As Brooks's scenario demonstrates, permitting a categorical exclusion of child support payments from disposable income streamlines the income determination process without creating a serious risk of a windfall to the custodial parent. Moreover, even if a double deduction occasionally results, we agree with the bankruptcy court below that "Congress likely weighed this as a lesser evil

than depriving dependent children of the benefit of funds intended solely for their care." *In re Brooks*, 498 B.R. at 863.

Illinois domestic relations law further illustrates the propriety of a categorical exclusion of child support payments under most circumstances. Illinois law sets out "reasonable and necessary for the support of the child" as the governing standard by which to determine whether an award of child support is appropriate. *See* 750 Ill. Comp. Stat. 5/505(a) ("[T]he court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for the support of the child, without regard to marital misconduct."). Because this standard overlaps substantially with the "reasonably necessary" language of § 1325(b)(2), the bankruptcy court rationally concluded that "[t]he reasonable necessity inquiry in section 1325(b)(2)'s parenthetical is, in effect, answered affirmatively by the Illinois divorce court's child support award, issued in accordance with Illinois law." *In re Brooks*, 498 B.R. at 863.[6]

---

[6] The trustee argues that the child support award in this case is a particularly unreliable indicator of reasonable necessity because the amount of the award was mutually agreed upon by Brooks and her ex-husband—not calculated by a court in the first instance. However, the Illinois divorce court was not bound by the agreement of the parties. *See Blisset v. Blisset*, 526 N.E.2d 125, 128 (Ill. 1988) ("[A]lthough property disposition agreements between spouses are binding upon the court, unless unconscionable, in marital dissolution proceedings, the court is not bound by agreements providing for the support, custody, and visitation of the children."). Instead, parties must demonstrate, "to the satisfaction of the court, that an agreement reached between the parents is in accord with the best interests of the children." *Id.* Further, if the custodial parent's financial circumstances improve, the non-custodial parent may seek a reduction of the award. *See* 750 Ill. Comp. Stat.

However, while the Illinois court's award of child support is instructive, it is not necessarily conclusive. Brooks argues that the Illinois divorce court retained *sole* authority to determine whether her $400.00 monthly child support payments were "reasonably necessary" under the Bankruptcy Code. In essence, she believes that "once a state court makes this determination of reasonable and necessary expenses pursuant to the [Illinois child support] statute[, it] is quite clear that the federal courts cannot overturn said decision." This contention goes too far. That § 1325(b)(2)'s "reasonably necessary" language should retain some independent force as a backstop against abuse of the bankruptcy system is apparent—otherwise, the clause would be surplusage. If the simple fact of awarding child support conclusively established that an award was "reasonably necessary to be expended for such child," that qualifying clause would be entirely redundant. Furthermore, it is important that bankruptcy courts retain the discretion to engage in an independent reasonable necessity inquiry because, while Illinois's standard for awarding child support is substantially the same as the standard set forth in § 1325(b)(2), this may not be the case in all states as each remains free to establish its own guidelines for calculating child support obligations. *See* 42 U.S.C. § 667(a) (requiring each state to establish guidelines for child support award amounts within the state).

---

5/510(a) (noting that a judgment with respect to maintenance or support "may be modified … upon a showing of a substantial change in circumstances"). Therefore, it is unlikely that an award of child support under Illinois law would inaccurately reflect payments "reasonably necessary to be expended" for the benefit of minor children.

As a result, the bankruptcy court properly concluded that although the Illinois divorce court's child support award was entitled to significant weight, it did not deprive the bankruptcy court of the ability to scrutinize child support payments to determine whether, in extreme cases, those payments are so excessive in comparison to acceptable expenditures that they cannot be deemed "reasonably necessary." Such extreme cases, however, are likely to be rare. And Brooks's $400.00 monthly child support payments certainly do not qualify. We therefore hold that, as a general matter, an above-median debtor may categorically exclude child support payments from the calculation of her disposable income under § 1325(b)(2).[7]

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[7] The trustee's final argument against categorical exclusion of child support payments is that in other sections of the Bankruptcy Code, Congress expressly excluded certain categories of income, *in their entirety*, from CMI and disposable income calculations. *See, e.g.*, 11 U.S.C. § 101(10A)(B) (noting that "current monthly income" "excludes benefits received under the Social Security Act"). He insists that Congress's deliberate choice not to create a similar blanket exclusion of all child support payments must be given some effect. But this comparison proves little more than that Congress wanted to preserve some hedge against abuse—the "reasonably necessary" condition—that bankruptcy courts could invoke to prevent total exclusion of child support in extraordinary cases. Ours, however, is not such a case.