NOTICE
Decision filed 08/14/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230045-U

NO. 5-23-0045

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| FRANCIS KUSH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 15-D-440 |
| | ) | |
| MELISSA KUSH, n/k/a Melissa Westmoreland, | ) | Honorable |
| | ) | Stacy L. Campbell, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Cates and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: We reverse and remand with directions where the agreed settlement order violated public policy by essentially deterring respondent from seeking modifications relative to her minor child and forbidding her from having contact with him unless she established residency in Illinois.

¶ 2    Respondent, Melissa Kush n/k/a Melissa Westmoreland, appeals the circuit court's December 27, 2022, order granting petitioner, Francis Kush's, motion to dismiss Melissa's petition for leave to file a petition for parental reunification with the parties' minor child, J.K. At issue is whether the court erred by finding, as a matter of law, Melissa's petition barred by a prior agreed settlement order requiring her to reestablish residency in Illinois as a precondition to requesting leave of court to file a petition for parental reunification. For the following reasons, we reverse and remand with directions.

1

¶ 3                                    I. Background

¶ 4      We recite only those facts necessary to our understanding of the case and resolution of this appeal. On May 28, 2015, Francis filed a petition for dissolution of marriage against Melissa, alleging that the parties married on November 13, 2010, in Georgia before moving to St. Clair County, Illinois. The parties shared one biological child, J.K. (born Nov. 28, 2011). Prior to the parties' relationship, Melissa had one child, M.K. (born Jan. 2004), who Francis adopted following the parties' marriage. In the petition for dissolution of marriage, Francis requested temporary and permanent sole care, custody, and control of J.K. with reasonable visitation awarded to Melissa. Francis also requested that the trial court order Melissa to provide suitable support for J.K., including college educational expenses; award Francis nonmarital property and his fair and equitable share of all marital property; bar each party from past, present, and future maintenance; and discharge all indebtedness incurred by the parties during their marriage. That same day, Francis filed a petition for temporary relief, claiming he had limited income and assets to support both himself and J.K. Francis also requested that the court order Melissa not to remove J.K. from Illinois.

¶ 5      On April 13, 2016, the trial court entered a judgment of dissolution of marriage, allocation of parental responsibilities and parenting plan, and a marital settlement agreement. Relevant to this appeal, the parties agreed to have shared care, control, and parental responsibility of J.K., with Francis designated as J.K.'s primary residential parent.

¶ 6      On August 30, 2016, Melissa filed a petition to modify allocation of parental responsibility and physical residence. Melissa argued that Francis's girlfriend, Heidi Thompson, engaged in a pattern of conduct to alienate J.K. from Melissa. Melissa requested that the trial court modify the

April 13, 2016, allocation judgment to award Melissa with sole parental responsibility and physical residence of J.K.

¶ 7    On March 8, 2017, the parties entered into an agreed modification order allocating parental responsibilities and parenting time. The parties recognized their inability to effectively coparent and make joint decisions with regard to J.K. As such, the parties agreed that Francis held all parental responsibility and decision-making rights for J.K., while Melissa held all parental responsibility and decision-making rights for M.K. Francis was designated custodian of J.K. The agreed modification order required the parties to notify each other with at least 60 days' written notice if one of them wished to change the residence, either within or outside Illinois, of the child whom they had parental responsibility. In August 2017, Melissa and M.K. moved to Georgia.

¶ 8    On December 20, 2017, the trial court entered an order instructing Melissa to return M.K. to Illinois, or the court would hold Melissa in contempt of court. The court ordered Melissa to notify Francis once M.K. returned to Illinois.

¶ 9    On February 6, 2018, Francis filed a petition for contempt, arguing that Melissa failed to contact him regarding M.K.'s whereabouts, thus, Melissa provided "no credible indication of *** moving back to St. Clair County, Illinois in compliance with the Order." Francis contended that Melissa, without court approval, moved to Georgia with M.K. following the March 8, 2017, order and continued to live in Georgia, despite the trial court's December 20, 2017, order instructing her to relocate to Illinois. Francis continued to state: "This agreement reached between the parties in March of 2017 and approved by the court was based entirely on the clear understanding the parties and the children would live in St. Clair County, Illinois."

¶ 10    On September 1, 2021, the trial court held a hearing on all pending motions, and the court heard the following testimony. Melissa testified that she moved from Illinois to Georgia with M.K.

3

in August 2017 to "regroup." Melissa acknowledged that, despite the court's order, she failed to return to Illinois due to financial reasons. Melissa testified that she "[o]ne hundred percent" intended to move back to Illinois "to establish a residence and have [her] son back in [her] life." She testified that she was "starting to get the ball rolling" with her employer to transfer to Illinois. Melissa testified that a possibility existed that she could obtain employment with the employer she worked for when she last lived in Illinois. Melissa reiterated that she "absolutely" intended to move back to Illinois, even though her mother and father lived in Georgia.

¶ 11    On cross-examination, Melissa acknowledged that she moved back to Georgia without the trial court's permission, stating: "I did notify but I didn't have permission." Melissa, again, stated her intention to move to Illinois, testifying that she hoped her current employer would transfer her, "and if not[,] I'll find other employment." Melissa further testified: "I know that I'm coming back. I don't know if I will stay with my employer[,] but I know that I am coming back" to Illinois. Melissa acknowledged that her last visit with J.K. took place in November or December 2017. Counsel for Francis asked Melissa to describe her "plan" to rehabilitate her relationship with J.K. once she moved back to Illinois. Melissa testified that she planned to start communicating electronically with J.K., under the guidance of a reunification counselor, while she prepared to move back to Illinois. Melissa testified that "it became apparent to [her] that if [she's] in Georgia[,] [she] won't have a relationship with [her] son and that's not acceptable." She continued to state that she wanted J.K. in her life, "so [she's] coming [to Illinois] for him." Melissa, however, did not know the specific date that she would return to Illinois. Melissa confirmed that she did not file a plan with the court about establishing electronic communication with J.K. to start the rehabilitation and reunification process.

4

¶ 12    Following the hearing on September 1, 2021, the trial court entered an agreed settlement order. The court indicated that the court recessed and "[p]arties t[ook] that opportunity to reach an agreement." The agreed order stated the following:

"(1) Melissa Westmoreland shall be permitted to move back to St. Clair County, Illinois and actually establish residency as a resident of the State of Illinois.

(2) Once Melissa Westmoreland establishes being a resident of the State of Illinois, she will be permitted to request leave of court to file for modification relative to [J.K.]. That filing must include a written plan as to how she wants to re-establish a relationship with [J.K.].

(3) In the meantime, beginning with the date of this order, Melissa Westmoreland shall have no contact with [J.K.] or his school."

The court found the parties' agreement "fair and reasonable and in keeping with the best interests of [J.K.]."

¶ 13    On October 6, 2022, Melissa filed a petition for parental reunification, requesting that the trial court permit her to engage a parental reunification expert to help her establish contact and parental time with J.K. She asked the court to order J.K. to attend counseling with a parental reunification expert and order other relief necessary to promote Melissa's reunification with J.K. Melissa claimed Francis engaged in wrongful and malicious conduct that alienated her from visiting and contacting J.K. Melissa requested the court waive the residency requirement set forth in the court's September 1, 2021, order, and allow her to initiate reunification counseling with J.K. without living in Illinois. To support her request, Melissa argued that she could not "save sufficient funds to move back to Illinois," her current employer could not transfer her to a location near St. Clair County, and she had caregiver responsibilities of her ailing mother in Georgia. Melissa

5

attached a "Preliminary Report of Guardian *Ad Litem*," dated March 6, 2017, recommending Melissa have visitation with J.K. every Wednesday and that J.K. have open access to communicate with both of his parents. Melissa also attached a supplemental report by the guardian *ad litem* (GAL), dated May 24, 2017, where the GAL indicated her belief that Francis and Heidi impeded J.K.'s relationship with Melissa, which was not in J.K.'s best interest. Melissa also attached the transcript of the report of proceedings from a hearing on September 12, 2017, concerning parenting time with J.K.

¶ 14    On October 14, 2022, Francis filed a motion to dismiss Melissa's petition for parental reunification. Francis stated that the parties engaged in settlement discussions, "with the help, aid and assistance of Judge Stacey Campbell," which led to a settlement agreement "memorialized" by the trial court's September 1, 2021, order. Francis requested the court dismiss Melissa's petition, where she failed to establish residency in Illinois before she sought to obtain leave of court to file her petition for reunification. As such, Francis requested the court, as a matter of law, dismiss Melissa's petition.

¶ 15    On October 19, 2022, Melissa filed a petition for leave to file a petition for parental reunification, requesting an emergency hearing on the matter. Melissa acknowledged that the September 1, 2021, agreed settlement order required her to establish residency in Illinois before the trial court permitted her leave to file for modification relative to J.K. Melissa stated that "it was [her] sincere belief and intent *** [to] re-establish Illinois residency in a reasonable and short time" at the time of the order. However, she requested the court waive the residency requirement because each day that "passe[d] denie[d] [her] a relationship with her child," as a result of her inability to save sufficient funds, maintain employment with her current employer near St. Clair County, and leave Georgia due to her ailing mother. Melissa attached her prior petition for parental

reunification to her petition for leave to file. That same day, Francis filed a motion for order to show cause requesting Melissa show cause to explain why the court should not hold her in contempt of court.

¶ 16    On October 24, 2022, Francis filed a motion to dismiss Melissa's petition for leave to file a petition for parental reunification, arguing that Melissa freely and voluntarily entered into a settlement agreement "in the exercise of her own judgement and in the exercise of the guidance she received from a very competent attorney and former judge." Francis requested that the trial court deny Melissa's petition and refuse to waive the residency requirement set forth in the September 1, 2021, order.

¶ 17    On November 10, 2022, Melissa filed a motion for emergency hearing, requesting a hearing on the parties' motions. The court scheduled a hearing for December 13, 2022, which was later rescheduled to December 27, 2022. On December 16, 2022, Francis filed a notice requiring Melissa appear at the December 27, 2022, hearing, pursuant to Illinois Supreme Court Rule 237(b) (eff. Oct. 1, 2021). Melissa subsequently filed a motion to quash Francis's Rule 237(b) notice.

¶ 18    On December 27, 2022, the trial court held a hearing on the parties' motions. The parties' attorneys and Francis were present. From the outset, Francis's attorney notified the court that Francis would not seek enforcement of his Rule 237(b) notice. As such, the court granted Melissa's motion to quash Francis's Rule 237(b) notice. Counsel for Melissa then argued that Melissa had a good faith belief that she would move back to Illinois within six months of the September 1, 2021, hearing. Counsel stated that Melissa did not enter into a contract, stating: "It's not a contract that she made. It was a good faith belief that it was in her best interest *** to" move back to Illinois to reconnect with J.K. Counsel for Melissa further stated that, despite Melissa's good faith belief, Melissa encountered several issues that impeded her ability to move, including the Covid-19

7

pandemic, Melissa's caregiver responsibilities for her ailing mother, relocation and employment issues, and financial concerns. Counsel continued to state that Melissa's plan was to have J.K. examined by a competent expert to determine if alienation of affection took place, and if so, whether counseling could reunify the relationship between Melissa and J.K. The court interrupted stating:

"[W]ith all due respect to the order that was entered September 1st of 2021, that might be what should have been argued back then. Unfortunately[,] what the Court has to do is look at this order that was entered, and there's two things. One, this is an agreement that was made between [Melissa] and Mr. Kush that lays out the plan for her to file in this courtroom to which that has not taken place. And I understand that you are making an argument that said that she believed that within six months she would move here, but there's not a clause that says that in here. And to read outside of the four corners of this document, this is an order that both parties entered into. That's number one.

Number two, this business about hiring an expert to determine if alienation of affection would occur, unfortunately given what has been pleaded in the 237(b) notice, that she doesn't have the funds to come up here for today's setting, leads the Court to believe how would she be able to afford an expert to examine the child to determine if that, in fact, that occurred?

It is troubling that we are at where we're at with this case. This is not something that the Court would ever want to do, is to say that a parent's rights are cut off from their child. The problem is, I sit here with an order that was entered over a year ago where mom and dad, who I would believe are best suited to put the best interests of their child first,

8

entered into an order that says that once she established as a resident of the State of Illinois, she will then be permitted leave of court to file a modification."

¶ 19   In response, counsel argued that Melissa was not bound by the court's September 1, 2021, order, because no consideration existed. Counsel for Melissa went on to state: "This was—basically it was her request. Not a contract between the parties. It was her request so that she could better prepare and be ready to take the next step." Counsel for Melissa argued again that no consideration existed and also asserted the defense of impossibility to specific performance, given the court essentially told Melissa "if you don't have the funds to do what you said you wanted to do, you're just out of luck."

¶ 20   The trial court responded that, based on the agreed settlement order and considering the tenets of contract law, Melissa agreed to the residency requirement. The court then stated the following:

"We started the testimony that day. We started the trial to which we took a break. We had not gotten to the part where Mr. Weller, who represented their minor child, was going to take the stand, and I don't know what he was going to say. So, couldn't consideration be twofold, that she did not want whatever the child representative was going to bring light to the Court, put that on the record as well as maybe she realized that her efforts might be futile at that point. I don't know, I[ ] never heard the testimony.

But what I do know *** is she signed this document. She agreed to these terms. I don't know how she's not bound by the Court Order. And impossibility being a defense, you're here today, and in part of what you're asking me to do is *** get an expert to examine the minor child, and the Court's not exactly sure that if she's willing to obtain an

9

expert or have counsel be here for her today, how I can't make a determination if that is a possibility or not that she could move back.

*** 

And like I said, do I think this is a travesty? I do. I think in four years on the bench I've never cut off communication between a parent and a child. But this is a unique situation where I've also never had a parent agree to certain terms in order to reunify themselves to a child that she did not have a relationship with back in 2021. And I agree that it's only probably been further distanced at this point if there has not been communication."

Specific to consideration, the court said that it was "not buying the argument that there was no consideration. *** Why else would she enter into this?" The court proceeded to state that it could continue to speculate why Melissa agreed to the September 1, 2021, order but "[t]he only thing I can do is look at what she signed." Following argument by the parties, the court granted Francis's motion to dismiss, and the court entered a written order to that effect. Melissa filed a timely notice of appeal.

¶ 21                                    II. Analysis

¶ 22    From the outset, we address several motions taken with the case. On March 20, 2023, Francis filed a motion for sanctions against Melissa, arguing that the appeal was frivolous, not taken in good faith, and initiated for an improper purpose, such as to delay, harass, or cause needless expense. On April 21, 2023, Melissa filed a motion to strike an April 10, 2018, transcript of an interview of Kathy Corn, J.K.'s psychologist, that Francis's attorney conducted. On August 8, 2024, Francis filed a motion to dismiss Melissa's appeal, arguing that the settlement agreement, which was agreed to by the parties and memorialized in writing, was not the result of a judicial

10

determination of the parties' rights. On October 4, 2024, Francis filed a motion to strike Melissa's argument on appeal that the trial court erred by finding that the agreed settlement order was enforceable, where Melissa's unrebutted evidence showed that Melissa could not reestablish Illinois residency within a reasonable time. In addition, Francis requested the court strike the transcript of the September 12, 2017, hearing and accompanying court order contained in Melissa's appendix on appeal.

¶ 23    After a thorough review, we deny Francis's motion for sanctions, as we do not find Melissa's appeal frivolous, initiated for an improper purpose, or taken in bad faith. We deny Francis's motion to dismiss appeal, where we find the September 1, 2021, order was final and appealable. We deny Francis's motion to strike Melissa's argument on appeal and the proceedings and order associated with the September 12, 2017, hearing, where Francis provided no citation to any case law or other authority to support his contentions. For the same reason, we deny Melissa's motion to strike transcript.

¶ 24    On appeal, Melissa argues that the trial court lacked the inherent power to enforce an order requiring her to establish residency in Illinois as a precondition for leave to file a petition for reunification. In addition, Melissa contends that such an agreement is against public policy. She also argues that the court erred in granting Francis's motion to dismiss, where the agreed settlement order lacked consideration, and an unrebutted showing existed that Melissa could not reestablish Illinois residency. Melissa also argues that the court erred by failing to consider the best interests of J.K. We agree with Melissa's argument that the agreed settlement order was against public policy.

¶ 25    Francis asserts that Melissa's argument concerning public policy is forfeited because she failed to raise it in the trial court. While we agree with Francis that Melissa raises this issue for the

11

first time on appeal, we may still address this issue if we choose to do so. " 'The rule of forfeiture is a limitation on the parties, not the court. [Citation.] A reviewing court may override considerations of forfeiture in furtherance of its responsibility to maintain a sound and uniform body of precedent.' " *In re Marriage of Haller*, 2012 IL App (5th) 110478, ¶ 24 (quoting *Smith v. Menold Construction*, *Inc.* 348 Ill. App. 3d 1051, 1056-57 (2004)). We believe our determination of the issue before us is important to address, given the impact the court's order has on the child-parent relationship between J.K. and Melissa. Accordingly, although Melissa forfeited this argument, we choose to address the issue on its merits.

¶ 26    The public policy of this state is reflected in its constitution, statutes, and judicial decisions. *In re Marriage of Rife*, 376 Ill. App. 3d 1050, 1063 (2007). Whether or not an agreement between parties, such as the agreed settlement order at issue, is contrary to public policy depends on the particular facts of the case. *Id.* In deciding whether an agreement is against public policy, we must consider "whether the agreement is so capable of producing harm that its enforcement would be contrary to the public interest." *Id.* "Our courts apply a strict test in determining whether a contract violates public policy; therefore, the courts will not declare a contract illegal unless it expressly contravenes the law or a known public policy of this state." *Stevens v. Rooks Pitts & Poust*, 289 Ill. App. 3d 991, 997-98 (1997). The issue before us is one of law, and thus, we review *de novo. Rife*, 376 Ill. App. 3d at 1063.

¶ 27    It is the public policy of Illinois that courts have an independent duty to ensure that postdecree modification arrangements made by parties that directly affect their children, specifically, issues related to custody, child support, and visitation, are in the best interest of the children. *Blisset v. Blisset*, 123 Ill. 2d 161, 167-68 (1988). This policy is reflected throughout the Illinois Marriage and Dissolution of Marriage Act (Act) and detailed in the Act's purpose to "avoid

prolonged uncertainty by expeditiously resolving issues involving children; [and to] recognize the right of children to a healthy relationship with parents, and the responsibility of parents to ensure such a relationship." 750 ILCS 5/102(5), (6) (West 2020). Further, the Act's purpose intends to "recognize children's right to a strong and healthy relationship with parents, and parents' concomitant right and responsibility to create and maintain such relationships"; "recognize that *** proximity to, and frequent contact with, both parents promotes healthy development of children"; as well as "continue existing parent-child relationships, and secure the maximum involvement and cooperation of parents regarding the physical, mental, moral, and emotional well-being of the children during and after the litigation." *Id.* § 102(7)(A), (B), (D).

¶ 28    Here, we agree with Melissa that the provisions in the agreed settlement order violate public policy. To allow the enforceability of this agreement, as currently written, would allow Melissa to voluntarily limit and contract away her parental rights to petition for leave to contact J.K. and work on rebuilding a relationship with him until she physically resides in Illinois. In our opinion, the trial court viewed the agreement as nonmodifiable, essentially determining that the agreement served as a complete bar to judicial intervention, unless Melissa fulfilled a precondition of reestablishing residency in Illinois. It is then—and only then—that she possessed the ability to request leave to petition the court for judicial intervention. We simply do not believe that forfeiting custody and visitation rights of one parent for her failure to move to Illinois supports or furthers the best interests of the child in any way.

¶ 29    We recognize that the agreement in this case does not amount to a complete bar to Melissa's ability to modify child visitation and custody. However, the plain intent and natural effect of the agreed settlement order in essence deters Melissa from seeking modifications relative to J.K. and forbids her from having "contact with [J.K.] or his school" from the date of the September 1, 2021,

13

order, until Melissa reestablishes residency in Illinois. Importantly, at the time of the trial court's September 1, 2021, order, the parties and the court agreed that it was in the best interest of J.K. that both Francis and Melissa lived in Illinois near their son. At the December 27, 2022, hearing, counsel for Melissa stated that Melissa, acting in good faith, believed she would move from Georgia to Illinois within six months of the September 1, 2021, order. Counsel for Melissa noted that Melissa agreed and signed the order because she "thought it would certainly be far easier for her to reunify with her child if she were [in Illinois] and *** able to attend everything that takes place, attend every counseling session that might have to be required." As such, counsel for Melissa asserted that the terms of the September 1, 2021, agreed settlement order served the best interests of both J.K. and Melissa. However, at the time Melissa filed for leave to file a petition for parental reunification, the evidence showed that several circumstances impeded Melissa's ability to move back to Illinois, including Melissa's caregiving responsibilities of her ailing mother, a lack of relocation work opportunities near St. Clair County, and financial constraints.

¶ 30    Francis argues that Melissa is bound by this agreement because she, herself, created the residency requirement and had competent counsel at the time of hearing. Despite this, our conclusion does not change. To view the September 1, 2021, order as Francis requests, would require us to look past the best interests of J.K. and allow the parties, in our opinion, to "bargain away their child[ ]'s interests" (*Blisset*, 123 Ill. 2d at 168). Moreover, despite the trial court's opinion that "this [wa]s travesty" to "cut off communication between a parent and a child," the court focused only on the signed agreement, ignoring the purpose of the Act, which is to recognize, *inter alia*, a child's right to a strong and healthy relationship with their parents and the parents' concomitant right and responsibility to create and maintain such relationships with their children. See 750 ILCS 5/102(5), (6), (7)(A) (West 2020). In our opinion, Melissa's assent to the agreement

14

does not make the provisions any more consistent with public policy of preserving the child-parent relationship and the right of children to healthy relationships with their parents, as well as the court's ability to modify the child-related provisions of the judgment if it concludes that to do so is in the best interests of the children. See *Rife*, 376 Ill. App. 3d at 1063. As stated above, the court had an independent duty to ensure that the postdecree modification agreement—one that directly affected the parties' child—was in fact in the best interest of the child. *Blisset*, 123 Ill. 2d at 167-68 ("The court is obligated in marital dissolution proceedings to protect the best interests of the children involved."). The court, here, failed to do this. See *id.* (any postdecree modification of child support, custody, or visitation likewise must serve the best interests of the children). For the foregoing reasons, we conclude that the settlement agreement is in fact "so capable of producing harm that its enforcement would be contrary to the public interest." *Rife*, 376 Ill. App. 3d at 1063. As such, we conclude that the September 1, 2021, order was against public policy, and thus, void.

¶ 31    Accordingly, we reverse the trial court's order granting Francis's motion to dismiss and remand the cause back to the court to allow Melissa leave to file a petition for parental reunification. Upon remand, we order the trial court to conduct a hearing within 30 days of the mandate of this order to determine whether interim visitation for Melissa is in the best interest of the minor child.

¶ 32                                  III. Conclusion

¶ 33    For the reason stated, we reverse and remand the judgment of the St. Clair County circuit court.


¶ 34    Reversed and remanded with directions.

15